**US TAX COURT
RECEIVED**

**MAR 17 2017
8:01 PM**

PA



**US TAX COURT
eFILED**

**MAR 17 2017**

FILED
CLERK, U.S. DISTRICT COURT

MAR 3 0 2017

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

GEORGE B. DENGIN,

              Petitioner,

       v.

COMMISSIONER OF INTERNAL REVENUE,

           Respondent

CV17-2485-R (JCx)

ELECTRONICALLY FILED

Docket No.   5822-17

Date: MAY 1, 2017
Time: 10:00 AM
CRT: 880

# PETITIONER'S MOTION FOR REVIEW OF JEOPARDY ASSESSMENT OR JEOPARDY LEVY PURSUANT TO RULE 56

<u>UNITED STATES TAX COURT</u>

GEORGE B. DENGIN,           )

                )      Docket No. 5822-17

            Petitioner,     )

                )

   v.                   )

                )      Electronically Filed

COMMISSIONER OF INTERNAL REVENUE,   )

                )

           Respondent.    )

---

### <u>MOTION FOR REVIEW OF JEOPARDY ASSESSMENT</u>

PETITIONER MOVES that the Court review the jeopardy assessment Respondent has made and determine that the jeopardy assessment should be abated in full. In addition, Petitioner requests, pursuant to IRC § 7429(c), that the Court grant a 40-day extension of the 20-day period for determination of this motion generally required under IRC § 7429(b)(2)(3). In support thereof, Petitioner shows unto the Court as follows:

       1. On November 4, 2016, at the conclusion of an examination that lasted for approximately five years, Respondent made a jeopardy assessment against Petitioner. A copy of the Notice of Jeopardy Assessment and Right of Appeal is attached as Exhibit 1. Concurrently with the jeopardy assessment, Respondent served Petitioner with the following documents, copies of which are attached:

            A. Notice of Federal Tax Lien against Petitioner filed in Santa Barbara County, attached as Exhibit 2.

            B. Notice of Federal Tax Lien against Fernald Point Limited Partnership,

as purported nominee of Petitioner, filed in Santa Barbara County, attached as Exhibit 3.

          C. Notices of Tax Due on Federal Tax Return, attached as Exhibit 4.

      2. On December 5, 2016, Petitioner timely submitted a protest of the jeopardy assessment in accordance with IRC § 7429(a)(2).   A copy of Petitioner's protest (without exhibits, most of which are attached to the Affidavits being filed in support of this motion) is attached as Exhibit 5.

      3. On February 13, 2017, Respondent's Appeals Office issued a letter sustaining the jeopardy assessment, a copy of which is attached as Exhibit 6.

      4. Pursuant to IRC § 7429(b)(1), the last day for filing this motion is 106 days after Petitioner's protest was made, which is March 20, 2017.  Accordingly, this motion is timely filed.

      5. Petitioner's contention is that the making of the jeopardy assessment was not reasonable under the circumstances.  (Petitioner also believes that the tax deficiency in this case will ultimately be determined to be substantially less than the amount of the jeopardy assessment, but because proof of that is likely to require a lengthy trial, Petitioner is not contesting the amount of the assessment at this time.)

      6. As set forth in detail in the Memorandum of Points and Authorities filed in support of this motion:

          A. The principal basis for the jeopardy assessment is Respondent's erroneous belief that that Petitioner is the beneficial owner of real property located in Santa Barbara County (the "Fernald Point Property") and that Petitioner, in an attempt to remove this asset from the United States, had listed it for sale.  In fact, the Fernald Point Property is owned

2

by the Fernald Point Limited Partnership and all of the interest in that partnership is legally and beneficially owned by Petitioner's spouse, Inessa Dengin. The Memorandum of Points and Authorities includes a detailed paper trail showing that Inessa Dengin owns 100% of the property and that Petitioner has no ownership interest at all.

       B. Although it is true that the Fernald Point Property was listed for sale on February 8, 2016, Respondent has ignored the fact that subsequent events are entirely inconsistent with Respondent's theory that the sale was intended to frustrate federal tax collection. The only offer received for the property was rejected and the listing was allowed to expire before the jeopardy assessment was made.

       C. Underlying Respondent's determination is an extraordinarily biased and misleading Jeopardy Recommendation Report. a copy of which is attached as Exhibit 7. Among other issues, it is clear from the overall tenor of the Report (as was clear from the tone of IDRs during the audit) that the revenue agent was being driven by inflammatory rhetoric from Inessa Dengin's former husband Ammi Tepper. Mr. Tepper, however, is a disgruntled litigant, having been unsuccessful in his action for relief from default in his child support obligations. Noting an email that "promised an ugly fight" against the Dengins, the judge found Mr. Tepper's claims to be "vexatious" and an "abuse of process" intended to "harass Mr. and Mrs. Dengin." In short, the credibility of any information coming from Mr. Tepper is highly suspect and should not be given any consideration in a serious matter such as a jeopardy assessment.

       7. Because the Petition in this case has only recently been filed, Petitioner has no information as to the identity of Respondent's counsel in this case. Therefore, it is unknown whether Respondent's counsel has any objection to the granting of this motion.

8.     If Respondent objects to this motion and disputes the factual basis for it, Petitioner requests that an evidentiary hearing be held. Petitioner specifically requests that the hearing be calendared for the trial session scheduled to commence April 17, 2017, in Los Angeles, California, the next regular trial session at the place of trial Petitioner has requested under Rule 140. To facilitate such a hearing, Petitioner requests, pursuant to IRC § 7429(c), that the Court grant a 40-day extension of the 20-day period for determination of this motion generally required under IRC § 7429(b)(3).

WHEREFORE, it is prayed that this motion be granted.

DATED:  March 17, 2017

*Michael C. Cohen*

Michael C. Cohen
T.C. Bar No. CM 0402
De Castro, West, Chodorow, Mendler, Glickfeld &
Nass, Inc.
10960 Wilshire Boulevard, Fourteenth Floor
Los Angeles, CA 90024-3881
Telephone: (310) 478-2541

*Jonathan I. Reich*

Jonathan I. Reich
T.C. Bar No. RJ 1066
De Castro, West, Chodorow, Mendler, Glickfeld &
Nass, Inc.
10960 Wilshire Boulevard, Fourteenth Floor
Los Angeles, CA 90024-3881
Telephone: (310) 478-2541

**EXHIBIT 1**



**DEPARTMENT OF THE TREASURY**
**INTERNAL REVENUE SERVICE**
**WASHINGTON D.C. 20224**

**DUPLICATE**

Department of the Treasury
Internal Revenue Service
915 Second Avenue, Mailstop W140
Seattle, WA 98174

Letter Number:
1584(P)
Letter Date:
NOV   4 2016
Taxpayer Identification Number:
████████

REGISTERED MAIL

Form: 1040

Tax Year End:
December 31, 2006 – December 31, 2011

Deficiency:

George Dengin

1939 Drummond Drive

Vancouver, BC  V6T 1B7

CANADA

Person to Contact:
John Conatore
Telephone Number:
206-946-3577
Employee Identification Number:
1000277462
Refer Reply To:
SE:S:E:TS:W - Mailstop W140
Last Day to File for Administrative Review:
DEC   4 2016

NOTICE OF JEOPARDY ASSESSMENT AND RIGHT OF APPEAL

Dear Mr. George Dengin,

Under section 6861 of the Internal Revenue Code (the Code), you are notified that the Internal Revenue Service has found you are attempting to place your property beyond the reach of the United States Government.  Accordingly, for the reasons discussed in greater detail below and to protect the Government's interests, we believe a jeopardy assessment is necessary and appropriate under I.R.C. § 6861.

Since (at least) tax year 2000 you have been investing for yourself in stocks and real-estate.  These investments, along with a small Schedule C, represent your only known/purported sources of income.

You filed your delinquent tax year 2006 through 2011 Form 1040 tax returns on March 15, 2013, while under examination with the IRS.  There is no record of you filing tax returns for any earlier years.  You signed a consent to extend the statute of limitations on assessment for tax years 2006 through 2011 which will expire on December 31, 2016, but you have refused to sign another consent to further work with the IRS to resolve the issues identified during the income tax examination, including the gain or loss on stock sales.

Page 1 of 6

DUPLICATE

The IRS has determined that you underreported and underpaid your federal income tax liability for tax years 2006 through 2011. As a result, the IRS has determined income tax deficiencies for tax years 2006 – 2011, which are summarized below (see page 4):

You filed returns for the subsequent tax years as follows:

| Tax year | Date Received |
|----------|---------------|
| 2012 | 10/24/2013 |
| 2013 | 10/21/2014 |
| 2014 | 06/30/2015 |
| 2015 | Not yet filed |

All of the above tax returns report zero dollars in tax liability.

Based on the Individual, Trust, and Partnership returns filed with the Canada Revenue Agency, you have a substantial amount of income/assets accumulated over the years, resulting largely from investments in stocks and real-estate ventures.

Jeopardy Factors

The Director of Field Operations has determined you have, or are, or appear to be, designing quickly to place property beyond the reach of the Government either by removing it from the United States, by concealing it, by dissipating it, or by transferring it to other persons under Treas. Reg. § 301.6861-1(a). The Director of Field Operations believes the assessment or collection of deficiencies of income tax will be jeopardized by delay; consequently, the Director of Field Operations is required to assess such deficiencies immediately, together with the interest, additional amounts, and additions to the tax provided by law. I.R.C. § 6861(a).

The Director's decision is based on all available information, including the following factors:

1. The house located at 1813 Fernald Point Lane, Santa Barbara, CA in the name of Fernald Point Limited Partnership, which is directly and indirectly owned and/or controlled by you, is on the market for sale.

2. All other known assets are in Canada, mostly under nominee names.

A large amount of the income tax liability determined is due to the stock sales. You were unable or unwilling to provide a basis for the stocks sold. Your Power of Attorney (POA) agreed that almost all of the stock sales were short-term sales. Since you have not provided the information of the basis or even when the stock was purchased, a calculation will be used reflecting the stock as purchased and sold in the same calendar year.

During the examination period, a stock's purchase price could, and often did, change significantly within a short period of time. Due to the volume and number of trades (both purchases and sales) and the millions of shares of stock traded, it was concluded that a stock basis could not be accurately computed from the limited information available to the revenue agent (RA). Based on this assessment and the desire to provide a reasonable and conservative estimate of cost, the gain or loss has been computed using the values reflected on the Canadian returns filed by you, Dengin Family Trust, and Dengin Family Trust #2. The values have been converted to US dollars using the conversion rate reflected by you on the respective returns. The values used on the Canadian returns appear to be based on an average cost, a

DUPLICATE

computation method that is not acceptable for individual stock valuations for U.S. tax purposes but has been used nonetheless in computing the gain/loss to provide a conservative amount for the jeopardy assessment. The burden to substantiate basis remains with you.

You failed to timely file your Forms 1040 and failed to timely make the annual election on Form 8891 to defer taxation on income accumulated in his RRSP. Therefore, your undistributed RRSP earnings are taxable. Since neither you nor your accountant provided cost basis for the numerous stock transactions for this RRSP Accounts and the IRS has deemed you an "ineligible individual", the IRS has attempted to identify the low and high cost basis for the stocks. Since the prices of the stocks could be volatile, the IRS has used the low cost as a reasonable basis in determining gain or loss. Further, if each stock was valued at the highest identified cost per share during the year few transactions would generate a gain for you as the sales price of the stock would be equal to or less than the cost in most instances. It is unreasonable to assume you would participate in stock transactions where you repeatedly break even or experience a loss on the sale.

In addition to the gains reported by you and your grantor trusts, the gain or loss reported by Inessa Dengin on the tax returns filed in Canada have also been included in the computation for each tax year under examination, 2006 through 2011. Per Inessa's sworn affidavit, you generated Inessa's investment income by selling stocks that you purchased using a joint line of credit. Also, per Inessa's sworn affidavit, you had trading authority over her accounts, you were responsible for the stock trades in her accounts, and she did not have any money of her own other than that identified from her divorce settlement. The gains reported by Inessa were generated by your stock trading for her accounts. Based on the foregoing, the stock trade gains reported by Inessa have been included in your taxable income. Without any supporting documentation to the contrary, the capital gain reported by Inessa Dengin will be reflected as belonging to you.

The method of determining the examination adjustment for the other issues reflected on the Revenue Agent Report was varied. "Taxable interest" and "additional taxable interest – Inessa" were determined primarily from information reported on the filed Canadian tax returns. The ordinary dividends, the Form 4797 adjustment in 2006, and the disallowance of Schedule C expenses are adjustments generated by applying the proper tax treatment to the disposition of your interest in a partnership and the resulting installment sale, repossession, and subsequent sale of property received by you in the transaction.

Itemized deductions replace the standard deduction for 2006, 2008, and 2009 as you provided draft returns which reflect significant Schedule A deductions. These items were not examined so including them in the computation allows you the benefit of all itemized deductions you identified during the examination. Additionally, you are being allowed additional investment interest expense not reflected on submitted Schedule A forms based on examination adjustments during the 2006, 2008, and 2009 tax years. Adjustments to increase itemized deductions in tax years 2007, 2010 and 2011 are also attributable to the allowance of deductions reflected on the draft returns you submitted and any change to investment interest expense which resulted from other examination adjustments. As in the other years, the Schedule A amounts were not examined and have been accepted as reflected.

The exemption adjustment is statutorily computed due to the increased adjusted gross income reflected on the report.

The net operating loss created by examination adjustments to the tax year ending December 31, 2009 has been carried back to tax year 2007 pursuant to IRC Section 172. You did not make any elections which would modify the 2 year carryback period.

DUPLICATE

No Self-Employment tax was computed on income reported on Schedule C. The U.S. and Canada have a totalization agreement in place to eliminate any potential double taxation with respect to social security taxes. You reported the earned income to Canada and as a resident of Canada it is that country which has the right to assert any employment tax on the earnings.

Foreign taxes paid to Canada, as reflected on the Canadian tax returns filed by you, Inessa Dengin or the grantor trusts will be allowed on your Form 1040 as a foreign tax credit. Foreign taxes paid in 2009 have been carried forward to 2010 and the corresponding Foreign Tax Credit allowed in year 2010.

Accordingly, based on information available at this time, the Director has approved assessment of tax and additional amounts determined to be due as reflected below and in the computations attached to this letter:

| Taxable Period | Tax | Penalty | Interest | Total |
|---|---|---|---|---|
| December 31, 2006 | $4,257,926 | $1,916,066.70 | $2,898,791.46 | $9,072,784.16 |
| December 31, 2007 | $1,338,515 | $602,331.75 | $700,307.95 | $2,641,154.70 |
| December 31, 2008 | $822 | $369.90 | $344.69 | $1,536.59 |
| December 31, 2009 | $0 | $0 | $0 | $0 |
| December 31, 2010 | $798,767 | $359,445.15 | $223,552.60 | $1,381,764.75 |
| December 31, 2011 | $49,208 | $22,143.60 | $10,872.15 | $82,223.75 |
| | $ 6,445,238 | $2,900,357.10 | $3,833,868.85 | $13,179,463.95 |

Under section 7429 of the Code, you are entitled to request administrative and judicial reviews of this assessment action.

**Administrative Review by the Internal Revenue Service**

For an administrative review, you must file a written protest with the Area Director within 30 days from the date of this letter, requesting a redetermination of whether or not:      (1) the making of this assessment is reasonable under the circumstances, and (2) the amount so assessed or demanded as a result of the action is appropriate under the circumstances. When feasible, a conference will be held on an expedited basis by the Area Director of Appeals Office to consider your protest. If you submit information or documentation for the first time at an Appeals conference, the Appeals Office may request comment from the Area Director on such evidence or documents. Enforced collection action may proceed during any administrative appeal process unless arrangements are made regarding collection of the amount assessed. To make such arrangements, please contact Revenue Officer Farrell Stevens at 818-543-2506.

Under IRC Section 6330, you are entitled to request a Collection Due Process (CDP) hearing with the Office of Appeals at which you may bring up issues in addition to whether our decision that collection is in jeopardy is reasonable. For this hearing, you must submit a request in writing to the Director of Field Operations within 30 days from the date of this letter. See the enclosed Publication 594, Understanding the Collection Process; Publication 1660, Collection Appeal Rights; and Form 12153, Request for a CDP. The references to notice of intent to levy in these Publications and this Form do not apply, because such notice is not required when collection is in jeopardy. If you

DUPLICATE

request a hearing under both provisions, we may handle both at one hearing.

Enforced collection action may proceed during any administrative appeal process unless arrangements are made regarding collection of the amount assessed. To make such arrangements, please contact revenue officer Mr. F. Stevens at (818) 543-2506.

You may request a judicial review of this assessment by bringing a civil suit against the United States in the U.S. District Court in the judicial district in which you reside or in which your principal office is located. However, in order to have this action reviewed by the District Court, you must first request the administrative review explained above. A civil suit must be filed in writing within 90 days after the earlier of: (1) the day the Service notifies you of its decision on your protest, or (2) the 16th day after your protest. The Court will make an early determination of the same points raised in your protest to determine whether the making of the assessment is reasonable under the circumstances and to determine whether the amount assessed or demanded as a result of the action is appropriate under the circumstances. The Court's determination is final and not reviewable by any other court.

**Appeal to the Courts in Case of Income, Estate, Gift, and Certain Excise Taxes**

If an agreement is not reached with the Internal Revenue Service, a notice of deficiency is required by law to be issued within 60 days from the date of jeopardy assessment made under section 6861 of the Code. You then have 90 days (150 days if outside the United States) from the date the notice is mailed to petition the United States Tax Court.

**Appeal to Courts in Case of Other Taxes Assessed Under Section 6862 of the Code**

Claim for credit or refund of taxes assessed under section 6862 of the Code may be filed in accordance with section 6511(a) of the Code for administrative and judicial review of the merits of the liability assessed. An administrative decision on the claim may be appealed to the courts under the provisions of section 7422(a) of the Code

If you have questions about this letter, you may call or write to the contact person identified on the front of this letter. You also have the right to contact the office of the Taxpayer Advocate Service. Taxpayer Advocate Service assistance is not a substitute for established IRS procedures, and it cannot reverse legally correct tax determinations nor extend the fixed time for you to request an administrative review or bring civil suit. The Taxpayer Advocate Service can, however, see that a tax matter that may not have been resolved through normal channels gets prompt and proper handling. If you want Taxpayer Advocate Service assistance, call 1-877-777-4778.

Thank you for your cooperation.

Sincerely,

Elise T.
Gardner

Elise T. Gardner
Director, Field Operations
International Individual Compliance
Large Business & International

Page 5 of 6

DUPLICATE

**Enclosures:**
Computation – Form 4549-A
Form 886-A: Explanation of Assessment & Tax
Computation
Publication 1660: Collection Appeal *Rights*
Publication 594: The IRS Collection Process
Publication 1: Your Rights as a Taxpayer
Form 12153: Request for a Collection Due Process Hearing
Form 609: Privacy Act Notice

**EXHIBIT 2**

11/04/2016 5:23:55 PM -0400 IRS

2016-0059494

Recorded
Official Records
County of
Santa Barbara
Joseph E. Holland
County Clerk Recorder

REC FEE    18.00

01:55PM 04-Nov-2016    TJ
                       Page 1 of 2

...MPLETE THIS INFORMATION.

...RDING REQUESTED BY:

_Marti Murphy_

AND WHEN RECORDED MAIL TO:

Internal Revenue Service

1332 Anacapa St Ste 101

Santa Barbara, CA 93101

IL
2    cert copy

SPACE ABOVE FOR RECORDER'S USE ONLY

Notice of Federal Tax Lien

(Please fill in document title(s) on this line).

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
(Additional recording fee applies)

SBR2005

11/04/2016 5:23:55 PM -0400 IRS

Department of the Treasury - Internal Revenue Service

# Notice of Federal Tax Lien

| Small Business / Self Employed - Area: 7 | Serial Number 237064116 | For Optional Use by Recording Office |
|---|---|---|

As provided by sections 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

**Name of Taxpayer**
George B. Dengin

**Residence**
1813 Fernald Point Lane
Santa Barbara, CA 93108

IMPORTANT RELEASE INFORMATION: For each assessment listed below, unless notice of lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ended (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2006 | XXX-XX-3915 | 11/03/2016 | 12/03/2026 | $9,072,784.16 |
| 1040 | 12/31/2007 | XXX-XX-3915 | 11/03/2016 | 12/03/2026 | $2,641,154.00 |
| 1040 | 12/31/2008 | XXX-XX-3915 | 11/03/2016 | 12/03/2026 | $1,536.59 |
| 1040 | 12/31/2010 | XXX-XX-3915 | 11/03/2016 | 12/03/2026 | $1,381,764.75 |
| 1040 | 12/31/2011 | XXX-XX-3915 | 11/03/2016 | 12/03/2026 | $82,223.75 |

| Place of Filing County Recorders' Office Santa Barbara County Santa Barbara, CA 93101 | Total | $13,179,463.25 |
|---|---|---|

This notice was prepared and signed at IRS Glendale, CA, on this, the 4th day of November, 2016.

| Signature F. STEVENS, 27-02-1512 | Title REVENUE OFFICER, (818) 543-2506 |
|---|---|

(NOTE: Certificate of officer authorized by law to take acknowledgements is not essential to the validity of Notice of Federal Tax lien Rev. Rul. 71-466, 1971-2 C.B. 409)

Part 1 – Recording Office          Form 668(Y) (Rev. 10-1999)

RECEIVED BY IRS-EEFAX   11/04/2016 5:24PM (GMT-04:00)

This is a true certified copy of the
original document on file or of record in
my office.  It bears the seal and
signature, imprinted in purple ink, of the
County Clerk, Recorder and Assessor.

COUNTY CLERK, RECORDER AND ASSESSOR, SANTA BARBARA CALIFORNIA
DATE: NOV 0 4 2016 BY DEPUTY: *Tara Gigi*

*Tara Jayasinghe*

**EXHIBIT 3**

11/04/2016 5:23:55 PM -0400 IRS                    PAGE 7   OF 10

2016-0059495

| Recorded | REC FEE | 21.00 |
| Official Records | | |
| County of | | |
| Santa Barbara | | |
| Joseph E. Holland | | |
| County Clerk Recorder | | |
| 01:55PM 04-Nov-2016 | TJ Page 1 of 3 | |

...SE COMPLETE THIS INFORMATION.

RECORDING REQUESTED BY:

Marti Murphy

AND WHEN RECORDED MAIL TO:

Internal Revenue Service
1332 Anacapa St Ste 101
Santa Barbara, CA 93101

IL 3. cert copy

SPACE ABOVE FOR RECORDER'S USE ONLY

Notice of Federal Tax Lien

(Please fill in document title(s) on this line)

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
(Additional recording fee applies)

SBR2005

RECEIVED BY IRS-EEFAX   11/04/2016 5:24PM (GMT-04:00)

11/04/2016 5:23:55 PM -0400 IRS                                    PAGE 8   OF 10

Department of the Treasury - Internal Revenue Service

## Notice of Federal Tax Lien

| Small Business / Self Employed - Area: 7 | Serial Number 237064616 | For Optional Use by Recording Office |
|---|---|---|

As provided by sections 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

Name of Taxpayer
Fernald Point Limited Partnership,
as nominee of George B. Dengin

Residence
1813 Fernald Point Lane,
Santa Barbara, CA 93108

IMPORTANT RELEASE INFORMATION: For each assessment listed below, unless notice of lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| Kind of Tax (a) | Tax Period Ended (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 12/31/2006 | XXX-XX-3915 | 11/03/2016 | 12/03/2026 | $9,072,784.16 |
| 1040 | 12/31/2007 | XXX-XX-3915 | 11/03/2016 | 12/03/2026 | $2,641,154.00 |
| 1040 | 12/31/2008 | XXX-XX-3915 | 11/03/2016 | 12/03/2026 | $1,536.59 |
| 1040 | 12/31/2010 | XXX-XX-3915 | 11/03/2016 | 12/03/2026 | $1,381,764.75 |
| 1040 | 12/31/2011 | XXX-XX-3915 | 11/03/2016 | 12/03/2026 | $82,223.75 |

This notice of federal tax lien is filed to specifically notate the attachment of the taxpayer's federal tax lien(s) to the property described in the attachment as Exhibit A.

| Place of Filing County Recorders' Office Santa Barbara County Santa Barbara, CA 93101 | | Total | $13,179,463.25 |
|---|---|---|---|

This notice was prepared and signed at IRS Glendale, CA, on this, the 4th day of November, 2016.

| Signature F. STEVENS, 27-02-1512 | Title REVENUE OFFICER, (818) 543-2506 |
|---|---|

(NOTE: Certificate of officer authorized by law to take acknowledgements is not essential to the validity of Notice of Federal Tax lien Rev. Rul. 71-466, 1971-2 C.B. 409)

Part 1 – Recording Office                                Form 668(Y) (Rev. 10-1999)

## Part 1 – Recording Copy

**Exhibit A**

This exhibit is an attachment to the Notice of Federal Tax Lien dated 11/04/2016, Serial number 237064616, for Fernald Point Limited Partnership, as nominee for George B. Dengin.

## Description of Property:

Pueblo map 26-B, Portion of Lot 43, in the City of Santa Barbara, County of Santa Barbara, and State of California.

Tax assessor parcel number 007-380-020.

Commonly known as: 1813 Fernald Point Lane,
                    Santa Barbara, CA 93101

This is a true certified copy of the original document on file or of record in my office. It bears the seal and signature, imprinted in purple ink, of the County Clerk, Recorder and Assessor.

COUNTY CLERK, RECORDER AND ASSESSOR, SANTA BARBARA CALIFORNIA
DATE____NOV 0 4 2016____BY DEPUTY:

Tara Jayasinghe

**EXHIBIT 4**

**Department of the Treasury**
**Internal Revenue Service**
Director
<u>225 W BROADWAY 3RD FLOOR</u>
GLENDALE, CA 91204

## DUPLICATE

Document Locator Number

| MFT 30 | Tax Period 2006 | Assessment Date 11/03/2016 | Transaction Code 370 |
|---|---|---|---|

Notice Date: **11/3/2016**
Name Control: **DENG**

Taxpayer

GEORGE DENGIN
1939 DRUMMOND DRIVE V6T 1B7
VANCOUVER BC
CANADA

Taxpayer
Identifying
Number

Form Number: **1040**
Plan/Report Number:
Tax Period Ended: **12/31/2006**

### Notice of Tax Due on Federal Tax Return

This is a notice of tax due on your tax return identified above.  Please pay the amount shown as Balance Due immediately.  Make your check payable to the United States Treasury.  If the balance due as shown below is incorrect because you made a recent payment, please send us the amount you believe you owe and an explanation of the difference.

**The balance due may include penalty and interest.  If you have any questions concerning the balance due or penalty and interest computation call us at 800-829-0115 (Business filers) or 800-829-8374 (Individual filers).**

| Reference | | Assessment | Adjustment or Credit | Balance Due |
|---|---|---|---|---|
| Tax-Adjustment | 300 | $4,257,926.00 | | |
| Failure to File Penalty IRC 6651(a)(1) | 160 | $1,064,481.50 | | |
| Accuracy Penalty IRC 6662 | 240 | $851,585.20 | | |
| Interest | 340 | $2,898,791.46 | | |
| Estimated Tax Penalty | 170 | | | |
| Trust Fund Recovery Penalty | 240 | | | |
| Failure to Pay Penalty | 270 | | | |
| Payment(s) | | | | |

see enclosed notice

$9,072,784.16

**Please return this copy with your payment to the address shown above**          Form 3552  (Rev. 1-2014) (Part 3)

**Department of the Treasury**
**Internal Revenue Service**
**Director**
**225 W BROADWAY 3RD FLOOR**
**GLENDALE, CA 91204**

DUPLICATE

Document Locator Number

| MFT 30 | Tax Period 2007 | Assessment Date 11/03/2016 | Transaction Code 370 |
|---|---|---|---|

Taxpayer

**GEORGE DENGIN**
**1939 DRUMMOND DRIVE V6T 1B7**
**VANCOUVER BC**
**CANADA**

Notice Date:   11/03/2016
Name Control:   DENG

Taxpayer
Identifying
Number

Form Number:   **1040**
Plan/Report Number:
Tax Period Ended:   **12/31/2007**

## Notice of Tax Due on Federal Tax Return

This is a notice of tax due on your tax return identified above.  Please pay the amount shown as Balance Due immediately.  Make your check payable to the United States Treasury.  If the balance due as shown below is incorrect because you made a recent payment, please send us the amount you believe you owe and an explanation of the difference.

The balance due may include penalty and interest.  If you have any questions concerning the balance due or penalty and interest computation call us at 800-829-0115 (Business filers) or 800-829-8374 (Individual filers).

| Reference | | Assessment | Adjustment or Credit | Balance Due |
|---|---|---|---|---|
| Tax-Adjustment | 300 | $1,338,515.00 | | |
| Failure to File Penalty IRC 6651(a)(1) | 160 | $334,628.75 | | |
| Accuracy Penalty IRC 6662 | 240 | $267,703.00 | | |
| Interest | 340 | $700,307.95 | | |
| Estimated Tax Penalty | 170 | | | |
| Trust Fund Recovery Penalty | 240 | | | |
| Failure to Pay Penalty | 270 | | | |
| Payment(s) | | | | |

see enclosed notice

$2,641,154.70

**Please return this copy with your payment to the address shown above**          Form **3552**  (Rev. 1-2014) (Part 3)

**Department of the Treasury**
**Internal Revenue Service**
**Director**
**225 W BROADWAY 3RD FLOOR**
**GLENDALE, CA 91204**

DUPLICATE

Document Locator Number

| MFT 30 | Tax Period 2008 | Assessment Date 11/02/2016 | Transaction Code 370 |
|---|---|---|---|

| Notice Date: | 11/2/2016 |
|---|---|
| Name Control: | DENG |

Taxpayer

GEORGE DENGIN
1939 DRUMMOND DRIVE V6T 1B7
VANCOUVER BC
CANADA

Taxpayer Identifying Number

| Form Number: | 1040 |
|---|---|
| Plan/Report Number: | |
| Tax Period Ended: | 12/31/2008 |

## Notice of Tax Due on Federal Tax Return

This is a notice of tax due on your tax return identified above.  Please pay the amount shown as Balance Due immediately.  Make your check payable to the **United States Treasury**.  If the balance due as shown below is incorrect because you made a recent payment, please send us the amount you believe you owe and an explanation of the difference.

**The balance due may include penalty and interest.  If you have any questions concerning the balance due or penalty and interest computation call us at 800-829-0115 (Business filers) or 800-829-8374 (Individual filers).**

| Reference | | Assessment | Adjustment or Credit | Balance Due |
|---|---|---|---|---|
| Tax-Adjustment | 300 | $822.00 | | |
| Failure to File Penalty IRC 6651(a)(1) | 160 | $205.50 | | |
| Accuracy Penalty IRC 6662 | 240 | $164.40 | | |
| Interest | 340 | $344.69 | | |
| Estimated Tax Penalty | 170 | | | |
| Trust Fund Recovery Penalty | 240 | | | |
| Failure to Pay Penalty | 270 | | | |
| Payment(s) | | | | |

see enclosed notice

$1,536.59

**Please return this copy with your payment to the address shown above**          Form 3552  (Rev. 1-2014) (Part 3)

**Department of the Treasury**
**Internal Revenue Service**
Director
225 W BROADWAY 3RD FLOOR
GLENDALE, CA 91204

DUPLICATE

Document Locator Number

| MFT 30 | Tax Period 2010 | Assessment Date 11/03/2016 | Transaction Code 370 |
|---|---|---|---|

Notice Date: **11/03/2016**
Name Control: **DENG**

Taxpayer

GEORGE DENGIN
1939 DRUMMOND DRIVE V6T 1B7
VANCOUVER BC
CANADA

Taxpayer
Identifying
Number

Form Number: **1040**
Plan/Report Number:
Tax Period Ended: **12/31/2010**

## Notice of Tax Due on Federal Tax Return

This is a notice of tax due on your tax return identified above.  Please pay the amount shown as Balance Due immediately.  Make your check payable to the **United States Treasury**.  If the balance due as shown below is incorrect because you made a recent payment, please send us the amount you believe you owe and an explanation of the difference.

The balance due may include penalty and interest.  If you have any questions concerning the balance due or penalty and interest computation call us at 800-829-0115 (Business filers) or 800-829-8374 (Individual filers).

| Reference | | Assessment | Adjustment or Credit | Balance Due |
|---|---|---|---|---|
| Tax-Adjustment | 300 | $798,767.00 | | |
| Failure to File Penalty IRC 6651(a)(1) | 160 | $199,691.75 | | |
| Accuracy Penalty IRC 6662 | 240 | $159,753.40 | | |
| Interest | 340 | $223,552.60 | | |
| Estimated Tax Penalty | 170 | | | |
| Trust Fund Recovery Penalty | 240 | | | |
| Failure to Pay Penalty | 270 | | | |
| Payment(s) | | | | |

see enclosed notice

$1,381,764.75

**Please return this copy with your payment to the address shown above**          Form 3552  (Rev. 1-2014) (Part 3)

DUPLICATE

**Department of the Treasury**
**Internal Revenue Service**
**Director**
<u>**225 W BROADWAY 3RD FLOOR**</u>
**GLENDALE, CA 91204**

Document Locator Number

| MFT 30 | Tax Period 2011 | Assessment Date 11/03/2016 | Transaction Code 370 |
|---|---|---|---|
| | | Taxpayer | |

**GEORGE DENGIN**
**1939 DRUMMOND DRIVE V6T 1B7**
**VANCOUVER BC**
**CANADA**

Notice Date: **11/03/2016**
Name Control: **DENG**

Taxpayer Identifying Number

Form Number: **1040**
Plan/Report Number:
Tax Period Ended: **12/31/2011**

## Notice of Tax Due on Federal Tax Return

This is a notice of tax due on your tax return identified above.  Please pay the amount shown as Balance Due immediately.  Make your check payable to the **United States Treasury**.  If the balance due as shown below is incorrect because you made a recent payment, please send us the amount you believe you owe and an explanation of the difference.

**The balance due may include penalty and interest.  If you have any questions concerning the balance due or penalty and interest computation call us at 800-829-0115 (Business filers) or 800-829-8374 (Individual filers).**

| Reference | | Assessment | Adjustment or Credit | Balance Due |
|---|---|---|---|---|
| Tax-Adjustment | 300 | $49,208.00 | | |
| Failure to File Penalty IRC 6651(a)(1) | 160 | $12,302.00 | | |
| Accuracy Penalty IRC 6662 | 240 | $9,841.60 | | |
| Interest | 340 | $10,872.15 | | |
| Estimated Tax Penalty | 170 | | | |
| Trust Fund Recovery Penalty | 240 | | | |
| Failure to Pay Penalty | 270 | | | |
| Payment(s) | | | | |

see enclosed notice

$82,223.75

**Please return this copy with your payment to the address shown above**          Form 3552  (Rev. 1-2014) (Part 3)

**EXHIBIT 5**

LAW OFFICES OF

DE CASTRO, WEST, CHODOROW, MENDLER, GLICKFELD & NASS, INC.

FOURTEENTH FLOOR EAST
10960 WILSHIRE BOULEVARD
LOS ANGELES, CALIFORNIA 90024-3881
TELEPHONE (310) 478-2541
TELECOPIER (310) 473-0123

WRITER'S DIRECT DIAL NUMBER
(310) 445-7625

WRITER'S EMAIL ADDRESS
mcohen@dwclaw.com

HUGO D. de CASTRO
RETIRED
ROBERT S. WEST
RETIRED
EUGENE D. SILVERMAN
1942 - 1998

OUR FILE NUMBER
9368.62A

December 5, 2016

**USPS EXPRESS MAIL**
**RETURN RECEIPT REQUESTED**

John Conatore
Internal Revenue Service
915 Second Avenue, M/S W 140
Seattle, Washington 98174

> Re:   George Dengin ("Taxpayer")
>        1939 Drummond Drive, Vancouver, BC V6T 187, Canada
>        SSN: ▮▮▮▮▮▮▮▮
>        Appeal of Jeopardy Assessment and Jeopardy Levy

Dear Mr. Conatore and Mr. Stevens:

> Preliminary Statement

The Taxpayer hereby appeals the Notice of Jeopardy Assessment and Jeopardy Levy issued by the IRS on November 4, 2016. A copy of the Notice of Jeopardy Assessment is attached as **Exhibit "1"**. Copies of the recorded Notice of Federal Tax Lien and related notices are attached as **Exhibits 2, 3, 4, 5 and 6**, respectively.

Taxpayer requests an in-person conference with the Appeals Office in Los Angeles, California.

As set forth in **Exhibit 1**, the sole basis for the jeopardy assessment is the allegation that the Taxpayer is attempting to sell his only property located in the United States, real property located on Fernald Point in Santa Barbara. However, and as explained in more detail below, Taxpayer does not own an actual or beneficial interest in the property in question. Accordingly, there is simply no basis for the making of a jeopardy assessment. See Treas.Reg. §301.6861-1.

In addition to being factually incorrect as to the underlying premise of its jeopardy assessment, the IRS has substantially overstated the amount of its jeopardy assessment because it improperly includes securities transactions from the separate property accounts of the Taxpayer's wife, Inessa Dengin ("Inessa"). In making its jeopardy assessment against the Taxpayer, the IRS has failed to exercise reasonable diligence in ascertaining the true facts before proceeding with extraordinary, and punitive, remedies against the Taxpayer. Accordingly, the jeopardy assessment should be abated in full and the liens recorded by the IRS removed.

John Conatore
Internal Revenue Service
December 5, 2016
Page 2

Background

    The Taxpayer, a U.S. citizen who has resided in Canada since 1965, is currently under examination with respect to his personal income tax returns for the years ending December 31, 2006 through December 31, 2011. The Taxpayer's wife, Inessa, is a Canadian citizen and has no United States filing requirement. While the examination of the Taxpayer is still ongoing, the IRS has determined in its Notice of Jeopardy Assessment that not less than $13,179,463.95 in tax, interest and penalties is due by the Taxpayer. See **Exhibits "1" and "6"** hereto. On November 4, 2016 the IRS made the jeopardy assessment at issue herein and recorded in Santa Barbara County both a Notice of Federal Tax lien in the Taxpayer's name and a nominee lien in the name of Fernald Point Limited Partnership, an entity in which the Taxpayer owns no actual or beneficial interest. See **Exhibits "2" and "3"** hereto.

    The stated basis for the issuance of the jeopardy assessment was:

    "1.    The house located at 1813 Fernald Point Lane, Santa Barbara, CA in the name of Fernald Point Limited Partnership, which is directly and indirectly owned and/or controlled by …[Taxpayer] …is on the market for sale.

    "2.    All other known assets are in Canada, mostly under nominee names."

    As is demonstrated below, (i) the property at 1813 Fernald Point Lane, Santa Barbara, CA (the "Fernald Point Property") is not owned, either directly or indirectly, by the Taxpayer, and (ii) the Fernald Point Property is not currently for sale by its owner, Fernald Point Limited Partnership, a British Columbia limited partnership ("FPLP"), which is owned by Inessa. See the enclosed Affidavit of Inessa Dengin and Exhibits "A" to "L" thereto (the "Inessa Affidavit").

    The Taxpayer Has No Direct Or Indirect Ownership Or Other Beneficial Interest In The Fernald Point Property

    The IRS has incorrectly determined that the Taxpayer is the true and/or beneficial owner of the Fernald Point Property. The true facts are that (i) Inessa is the sole owner of FPLP, which owns the Fernald Point Property, and (ii) the funds for the purchase of the Fernald Point Property, $5.1 million dollars, came entirely from Inessa's stock trading activities and other, pre-marriage assets.

    Inessa's ownership of FPLP is established by the organizational and ownership documents for FPLP. When it was initially formed in 2010, FPLP was, based on the advice of Inessa's Canadian lawyers and accountants, owned 99% by Inessa and 1% by the Taxpayer.[1] See

---

[1] Inessa's ownership of FPLP consists of a 98% limited partnership interest held in her name and a 1% general partnership interest held in the name of her wholly owned corporation 0885303 B.C. Ltd. The Taxpayer's 1% interest was held in his revocable trust, the Dengin Family Trust.

LAW OFFICES OF

DE CASTRO, WEST, CHODOROW, MENDLER, GLICKFELD & NASS, INC.

John Conatore
Internal Revenue Service
December 5, 2016
Page 3

Exhibits "7" and "8" hereto, and the Inessa Affidavit, paragraphs 27 through 32. In 2012, the Taxpayer transferred his 1% interest in FPLP to Inessa as a gift, for which gift the Taxpayer has filed a United States gift tax return. See **Exhibit "9"** hereto. From and after that time, Inessa has been the sole owner, directly or indirectly, of the Fernald Point Property.

That the funds for the purchase of the Fernald Point Property came from Inessa can be seen from a simple tracing of those funds, something which the IRS has failed to do. That tracing, as set forth below, establishes without a doubt that the Fernald Point Property is, and always has been, owned by Inessa.

The funds for the purchase of the Fernald Point Property were derived as follows:

1.      In connection with her divorce from her prior husband, Inessa disposed of interests in four pieces of real property which she had owned prior to her marriage to the Taxpayer for a total of about $720,000. Those sales consisted of:

(a)      $375,000 from the sale of the property located at 2095 Queens Avenue, West Vancouver, British Columbia, Canada; See Inessa Affidavit, paragraphs 7 to 15.

(b)      $205,000 from the sale of property generally known as Lot G, and also located in West Vancouver, British Columbia, Canada; See Inessa Affidavit, paragraphs 16 and 17.

(c)      $140,000 from the sale of an interest which Inessa owned in an apartment located at 1621 St. Gorges Street, North Vancouver, British Columbia, Canada. See Inessa Affidavit, paragraphs 18 to 20.

2.      Including the above amounts from the sales of real property, in connection with her divorce Inessa received in excess of $1,000,000 in liquid assets. (See Inessa Affidavit, paragraphs 6 and 17.) Inessa also received $203,231 from the sale of her interest in the Hudson Street condominiums, which she has acquired shortly after her divorce.

3.      Using the funds from her divorce, including her above listed real estate sales, Inessa opened new, non-registered, brokerage trading accounts. See Inessa Affidavit, paragraphs 22 and 23, and Exhibit "G" thereto. No one other than Inessa was authorized to place trades on those accounts. See **Exhibit "10"** hereto. This was not, it should be noted, Inessa's first experience in trading securities. Previous to opening these accounts, Inessa had a securities trading account with IPO Capital.[2]

---

[2] The Taxpayer did, until 2012, have trading authority for a small Tax Free Savings Account owned by Inessa as well as one other non-registered account. None of the funds for the purchase of the Fernald Point Property came from this account.

LAW OFFICES OF

DE CASTRO, WEST, CHODOROW, MENDLER, GLICKFELD & NASS, INC.

John Conatore
Internal Revenue Service
December 5, 2016
Page 4

4.       In addition to the funds from her real estate sales and divorce settlement, Inessa
borrowed funds from her joint line of credit with the Taxpayer and used those funds for the
purchase of securities.  See Inessa Affidavit, paragraphs 21 - 26 and **Exhibit "11"** hereto.  As
provided in the agreements for the line of credit, even though that line is also secured by a lien
against the Taxpayer's home at 1939 Drummond Drive (the "Drummond Drive Property"),
Inessa was personally responsible for the repayment of that loan.  Of significance is the fact that
Inessa had lent the Drummond Drive Trust, which owns the Drummond Drive property,
$580,000 in cash for the purchase of that property from funds which Inessa had from before her
marriage to the Taxpayer.  The funds for this loan came from Inessa's sale of the Queens Avenue
Property, including Lot G.  See Paragraph 1 (a) and (b), above.  In other words, in drawing
against the joint credit line Inessa was really doing nothing more than accessing her own
premarital assets.

5.       Starting in 2006, the Taxpayer and Inessa made a reasonable allocation of interest
paid on their joint line of credit for tax reporting purchases.  That allocation was based on the
total amount each of them had borrowed during the year.  Specifically, in 2006 and 2007 Inessa
claimed 70% of the line of credit interest for Canadian tax purposes, and in 2008 Inessa claimed
only about 30% of the line of credit interest for Canadian tax purposes.

6.       From 2005 through 2007, Inessa' trading activity in her securities account
generated substantial gains.  And while Inessa suffered trading losses in 2008, those losses did
not eliminate her prior gains.  See Inessa Affidavit, paragraph 24, and **Exhibit "12"** hereto.
While the Taxpayer may have advised Inessa regarding some of her trading activities, Inessa was
the legal and beneficial owner of each of her securities accounts and the Taxpayer did not have
any trading authority over any of Inessa's non-registered accounts from which the funds for the
purchase of the Fernald Point Property were derived.  See Inessa Affidavit, paragraph 26.

7.       Inessa's Canadian tax filings support the proposition that Inessa, and not the
Taxpayer, was and is the legal and beneficial owner of the securities in her trading accounts:

(a)       Inessa reported her stock trading activities on her tax returns and paid the
resulting income taxes;  See **Exhibit "13"** hereto.

(b)       None of Inessa's stock trading gains were attributed to the Taxpayer under the
Canadian "spousal attribution" rules.

(c)       The separate nature of Inessa's and the Taxpayer's stock trading activities and,
therefore, Inessa's legal and beneficial ownership of the securities in her trading accounts, can be
easily seen in an examination of their respective trading activities during 2006.  In 2006, Inessa
reported stock trading gains of approximately $1.4 million and paid income taxes of about
$250,000.  The Taxpayer, on the other hand, initially reported a tax loss of approximately $2.4
million in his tax filings.  While Inessa could have entirely eliminated the tax bill on her 2006

LAW OFFICES OF
DE CASTRO, WEST, CHODOROW, MENDLER, GLICKFELD & NASS, INC.

John Conatore
Internal Revenue Service
December 5, 2016
Page 5

trading activities by taking the position advocated by the IRS - i.e. that her trading gains were actually the Taxpayer's gains (and thus offset by his losses) - she did not do so. The simple reason for this, of course, is that she, and not the Taxpayer, was the legal and beneficial owner of the securities in her brokerage accounts.[3]

8.      Having amassed substantial funds in her trading accounts, in 2010 Inessa used those funds, along with other funds belonging to her, to purchase the Fernald Point Property as a vacation home. See Inessa Affidavit, paragraphs 27 to 32 and **Exhibits "14", "15" and "16"** hereto.

9.      In purchasing the Fernald Point Property, Inessa relied on her Canadian attorneys and accountants to provide advice on structuring the purchase in a way to minimize any potential U.S. estate taxes, and it was those lawyers and accountants that recommended the limited partnership structure which was subsequently implemented by Inessa. See Inessa Affidavit, paragraph 27.

10.      In regards to the affidavit sworn by Inessa in her legal dispute with ex-husband:

(a)      Inessa's statement that she borrowed funds from her joint line of credit to invest in securities is consistent with her Canadian tax filings; and

(b)      Inessa's statements that the Taxpayer purchased the Fernald Point Property is in error as demonstrated by the above information and documents. See Inessa Affidavit, paragraphs 5 and 27 to 32.

<u>The Fernald Point Property Is Not Currently For Sale And, Therefore, There Is No Credible Evidence To Show That It Is Being Placed Beyond The Reach Of The IRS</u>

In addition to the fact that the Taxpayer does not own an actual or beneficial interest in the Fernald Point Property, and thus that property is not subject to any U.S. tax obligations which the Taxpayer may have, there is no credible evidence to establish that any change in the ownership or status of the Fernald Point Property is likely in the near or foreseeable future. While the Fernald Point Property was at one time listed for sale, that is no longer the case. On February 8, 2016 Fernald Point Limited Partnership entered into a Residential Listing Agreement with Sotheby's International Realty for the sale of Fernald Point Property at a price of $8.25 million. See **Exhibits "17" and "18"** hereto, and the Inessa Affidavit. The listing agreement for the Fernald Point Property originally expired on July 8, 2016, and was extended several times to November 1, 2016, when it finally expired. Following its expiration on November 1, 2016,

---

[3] It is, perhaps, worth noting here that all of Inessa's and the Taxpayer's Canadian tax filings for 2006 through 2011, the period the Taxpayer is under examination for, were filed timely, if not early.

LAW OFFICES OF

DE CASTRO, WEST, CHODOROW, MENDLER, GLICKFELD & NASS, INC.

John Conatore
Internal Revenue Service
December 5, 2016
Page 6

the listing agreement for the Fernald Point Property was not renewed. See **Exhibit "19"**, hereto. A December 1, 2016 Property Profile for the Fernald Point Property shows that it is still owned by FPLP. See **Exhibit "20"**, hereto.

As the Fernald Point Property is not actively being listed or marketed for sale, there is no credible evidence to show that, even if it were subject to any U.S. tax liability that the Taxpayer might have, it is being placed beyond the reach of the IRS. The jeopardy assessment is, therefore, not required to maintain the status quo during the Taxpayer's examination by the IRS.

<u>The Amount of the Jeopardy Assessment is Excessive</u>

The amount of the jeopardy assessment is excessive because the IRS has (i) failed to include the Taxpayer's basis in estimating the amount of profit, and thus tax due, from the stock sales in question, and (ii) improperly attributed income from trading in Inessa's stock accounts to the Taxpayer.

The Taxpayer, as part of his ongoing examination, is in the process of assembling the basis information for his stock trading activities, and that information will be provided to the IRS as soon as it is available.

As explained in some detail above, all of the funds in Inessa's securities trading accounts and, therefore, all of the income and/or gains generated in those accounts, belongs solely to Inessa, and not to the Taxpayer. As such, the IRS many not include any of that income or those gains in calculating any amounts that may be due by the Taxpayer. See Inessa's Affidavit, Exhibits "A" to "L" thereto and paragraphs 1 through 7, above.

Kindly acknowledge receipt of this letter by having your "received" stamp imprinted on the enclosed copy of this letter and return it to this office in the postage-paid envelope which has been provided for your convenience.

Very truly yours,

*Michael C. Cohen*

Michael C. Cohen
For the Firm

MCC

M:\FirmDocs\JIR\Dengin\Appeal of Jeopardy Assessment Final.docx

**EXHIBIT 6**

**Internal Revenue Service**
Appeals Office
915 Second Avenue
Room 2790, MS W680
Seattle, WA  98174

**Department of the Treasury**

**Person to Contact:**
Tom Vangen
Employee ID Number: 0278889
Tel:  (206) 946-3575
Fax:  (877) 821-4866
**Refer Reply to:**
AP:EX:SEA:TRV
**In Re:**
IRC 7429 Administrative Hearing
**Tax Period(s) Ended:**
12/2006 12/2007 12/2008 12/2009
12/2010 12/2011

Date:  02-13-2017

GEORGE B DENGIN
1939 DRUMMOND DR
VANCOUVER BC  V6T 1B7
CANADA

Dear Mr. Dengin:

We have concluded our review on the appropriateness of the jeopardy assessment
recorded on 11/04/2016 and relating to the property located at 1813 Fernald Point,
Santa Barbara, California.    This hearing was in response to your protest dated
12/05/2016 where you requested an administrative review of this assessment action
pursuant to IRC sec. 7429.

As I explained to your representative, we find that the making of the jeopardy
assessment was reasonable and that the amount assessed was appropriate.    Based
on the record, it appeared that the collection of the tax deficiency was in jeopardy – this
was because the above property was listed for sale.   We also concluded that Fernald
Point Limited Partnership was your nominee.  Again, this is based on the administrative
record.

If you would like to make a payment on your tax and penalties, please make payable to
the United States Treasury.    Additional interest continues until you pay the total
amount due.

If you have any questions, you may contact me at the above number.

Sincerely,

Tom Vangen
Appeals Officer

cc: Michael Cohen Atty

**EXHIBIT 7**



**Jeopardy Recommendation Report**

**FILE COPY**

George Dengin   SSN: ████████   Years: 2006-2011

George Dengin (Taxpayer), DOB: 10/31/1954, has a Bachelor of Education degree. He is a dual citizen who currently resides in Canada and identifies himself as a Canadian citizen on returns filed with Canada. The Taxpayer was born in San Francisco, CA on October 31, 1954. *(Exhibit 17 -MFTRA)* He said his family moved to Canada when he was about 7 years of age. No actions were identified from Government data bases which would indicate the Taxpayer has made any attempt to relinquish his U.S. citizenship. Taxpayer requested and received a social security number from the Social Security Administration in December 2012. *(Exhibit 11 – Letter from SSA)* If Taxpayer had taken any previous action to relinquish his U.S. citizenship, he would not have secured the social security number. As a U.S. citizen, Taxpayer is taxable in the United States on worldwide income.

George married Inessa (DOB: 4/17/1969) in 2003. Inessa is a Canadian citizen who moved to Canada with her family when she was 7 years of age from Russia; therefore, she has no filing requirements in the USA. They reside at 1939 Drummond Drive, Vancouver BC Canada. This property was purchased in 2003 for approximately CDN $3.5-$4 Million. The title of this property is held in the name of the Drummond Drive Property Trust. Inessa was previously married; her divorce from Ammi Tepper was finalized in July 2002. Ammi and Inessa were later involved in a lawsuit regarding Ammi's child support obligations. In June 2012, Inessa filed a sworn affidavit with the Supreme Court of British Columbia that discussed her finances and Taxpayer's financial dealings in detail.

**Business Activity**

Since 2000 Taxpayer has been self-employed investing for himself in stocks and real-estate. These investments, along with a small Schedule C, represent his only sources of income. His Schedule C is fee income he earns infrequently for introducing people with ideas or searching for investment opportunities.

As stated by Inessa, Taxpayer earns his income by borrowing funds against the VanCity line of credit and investing these funds in the stock market, or stock market related deals, and paying back the line of credit when he sells the stock. Taxpayer has a number of investment accounts that he manages. For the years under audit, the Taxpayer primarily trades in penny stocks and will often make multiple purchase and sale transactions in the same day, including multiple transactions of the same stock. Taxpayer also purchases private stock (not publically traded) and moves it into one of his investment accounts. The Taxpayer's cost basis is not recorded by the company as stock is contributed so only the current market value of the stock is discernable from the investment company's statements. Besides stocks, Taxpayer also purchased forward future contracts, warrants and real estate (from undeveloped land to luxury condominiums). Taxpayer holds 50% interest in a real estate joint venture, Youbou Lands.

Page 1 of 14

Youbou Lands Joint Venture was formed to purchase a former old sawmill site bordering Cowichan Lake, an hour's drive from Victoria. The plan for the property is to clean it up and develop the property to include 1,950 new housing units, a resort hotel, spa and light industrial park.

**Activity Giving Rise to Jeopardy:**

**Illegal Activities:**

Since Taxpayer did not provide much information about his education and work experience during the interview, IRS Revenue Agent (RA), Debbie Pratum, asked for more information in an Information Document Request (IDR). The response to the IDR was as follows: In 1980 Taxpayer was a licensed stock broker and investment advisor in Canada. Taxpayer worked as a licensed stock broker between 1980 and 1985, where he began investing for his own account. Between 1985 and 1990 his license was suspended due to allegations which were ultimately resolved with a small fine. Published articles stated he had his license permanently revoked for serious trading infractions and appealed in 1990. The sanction was reduced from a permanent revocation to a five year suspension following the appeal. *(Exhibits 8, 9 & 10 – News articles)*

In 1990 Taxpayer resumed work as a licensed stock broker from 1990 through 2000. By 2000, his investment activity had proved lucrative enough for him to retire from being a stock broker and concentrate on personal investments.

A newspaper article in the Vancouver Sun from June 27, 2006 mentions "that Dengin was a former Vancouver stockbroker who had his license permanently revoked in 1987 for serious trading infractions. In 1990, he appealed that suspension and it was reduced to five years."*(Exhibit 8 – news article)*

An article in a respected Vancouver real estate blog discusses some of Dengin's other activities. *(Exhibit 10 – news article)*

**Transfer of property to put out of the reach of the government:**

1813 Fernald Point Lane, Santa Barbara, CA was purchased in 2010 for $5.1 million in cash under the name of Fernald Point Limited Partnership, A British Columbia Limited Partnership. The L.P was originally owned by Inessa Dengin (wife) - 98%; 08885303 B.C. Ltd – 1% (which is owned 100% by Inessa), and the Dengin Family Trust – 1% (Grantor Trust where George owns 100%). On 12/31/2012 the 1% owned by Dengin Family Trust was gifted to Inessa Dengin to make her the 100% owner. Per Inessa's affidavit, George purchased this property and established the Fernald Point Property L.P. to hold the title of the property. *(Exhibit 1 – Inessa Affidavit)*

There are documents from Chicago Title Company that list George Dengin as the actual buyer of the property and then authorizing the deed to be named in the Fernald Point Limited Partnership. George signed the "Additions and/or Amendment to Escrow Instructions" and all other pages of the purchase

documents with Chicago Title Company.  There are also email correspondences between Chicago Title Company and George Dengin's email.  *(Exhibit 2 - Chicago Title Company)*

George directly and indirectly pays for the expenses associated with this property *(Exhibit 1– Affidavit #38)*.

The house is currently listed for sale at $6,950,000.  The house was first listed on February 9, 2016 for $8,250,000.  Price reduced on April 8, 2016 to $7,750,000 and was further reduced on May 31, 2016 to the current price of $6,950,000.  The first listing expired on August 2, 2016 and relisted on the same day, August 2, 2016.  The second listing expired on October 2, 2016 and relisted on October 6, 2016.  The Taxpayer appears to be very motivated to sell his only U.S. holding.

Without a jeopardy assessment and nominee collection lien on this property, all the proceeds from the sale of this house would be transferred to Canada and be out of the reach of the U.S. government since the Taxpayer does not have any bank accounts or any other interests in the U.S.

FBAR filings by the Taxpayer reflect Canadian Registered Retirement Savings Plan (RRSP) balances at the end of 2010 as CDN $11,335,221.  Starting in 2011, the Taxpayer has made the following withdrawals from his RRSP:   2011    $3,548,252 – withdrawals reported on 1040 and Canadian tax returns
        2012    $304,645 - withdrawals reported on 1040 and Canadian tax returns
        2013    $2,448,577 - withdrawals reported on 1040 and Canadian tax returns
        2014    $120,944 - withdrawals reported on 1040 and Canadian tax returns
        2015    US return under extension until 10/15/16

Per the 2015 filed FBAR, Form 114, the balance remaining in the RRSP account is only CDN $254,905. It appears the Taxpayer may be trying to further liquidate his known assets.

### *Means and Income of Inessa Dengin (wife): (Exhibit 1 - Affidavit)*

**Perestroika Products Ltd:**  Inessa holds a 25% interest in the family (her parents, her brother and his wife) food manufacturing and distribution company in Vancouver, but she does not take any money from the business.  All of her earnings are reinvested in the family business.  Her brother runs the company.

Inessa received a property settlement as a result of her divorce from Ammi Tepper in 2002.  The settlement included funds from an RRSP account of CDN $40,000 and an additional payment of CDN $350,000.  These amounts constituted the entire property settlement and the amounts were corroborated with Ammi Tepper.  The CDN $350,000 was contributed by Inessa to the purchase of the family home (Drummond Drive property).  Inessa deposited the CDN $40,000 into an RRSP account for herself.

Per Inessa's affidavit she states, "I am not otherwise employed and I do not earn a substantial income from another source outside of investment income that I earn from investing in the stock market and in stock market related deals with my husband, George."  Inessa and George have a joint bank account

where money is used to invest, pay bills, etc.   Inessa also states, "Throughout my marriage to George, I have had limited involvement in our finances: George has been primarily responsible for our finances."

Inessa has a Union Securities RRSP account with a value approximately $1.8 million and a Vancity TFSA account; George has trading authority over these accounts and has handled every stock transaction within the accounts.  These accounts are recognized as the sole and separate property of Inessa and have not been addressed in the context of the IRS tax audit of the Taxpayer.

Fernald Point Limited Partnership:  This partnership was formed July 8, 2010 in British Columbia, Canada.  The closing for 1813 Fernald Point, Santa Barbara, CA occurred on July 16, 2010.  It appears this partnership was formed for the specific purpose of holding this property. *(Exhibit 3 – Fernald Point Ltd PS Agreement)*

The partnership agreement states it is a partnership for the purpose of carrying on the businesses of real estate investments, the investment in marketable securities and related and ancillary investments and businesses, including without limitation consulting, the supply of equipment, premises, supplies and personnel to other businesses, which limited partnership will allow for the admission of additional limited partners.  At the time of formation, the ownership interest was as follows:  1%- 0885303 BC Ltd, 1% -Dengin Family Trust, and 98%-Inessa Dengin.  In 2012, Dengin Family Trust gifted its 1% to Inessa. (Note: Dengin Family Trust is a grantor trust with George Dengin owning 100%).

As can be seen in the concealed asset section below, George Dengin has numerous Trusts and LTDs that he forms to put properties into.  A couple of the names correspond directly with the street name of the property that is put into that LTD or trust.

## Concealed Assets:

*(Exhibit 4 – Dengin Family Trust Summary of Interview by IRS Counsel, Melanie Senick, Nov 19 and Exhibit 5– Deng Interview via GM Slack; and Exhibit 1 - Affidavit) Comments below also include updated information received during audit.*

George Dengin has a history of titling his property/assets under trust names and in other names as nominees.  In Inessa's affidavit, she states she acquired interest in the below at no or little financial cost to her.  George's money was used to make the initial investment in the entities/properties.

*Drummond Drive Property Trust:*  1939 Drummond Drive, Vancouver, BC.  Inessa is the trustee and beneficial owner of the family home.  Inessa contributed $350,000 towards the $3,500,000 purchase price.  Her funds came from her divorce settlement from her first husband, Ammi Tepper.

*Lake Placid Property Trust:*  2215 Lake Placid Road, Whistler, B.C.  Inessa is the trustee and one of the beneficial owners of the trust that holds the family vacation home.  George admits to having paid $2.5 million in cash for this property and putting the legal name either in a trust name or Inessa's name.

*602565 B.C. Ltd:* Inessa is the Director, shareholder, and officer. This held title to "1621 St. Georges Avenue, North Vancouver, B.C. as a nominee of the beneficial owner, but this company never had a beneficial interest in the St. Georges Property." (per the affidavit, Exhibit 1)  **NOTE:** In Canada, beneficial ownership (not legal title) determines ownership for federal income tax. This property was sold prior to 2006 so it was not part of the audit and ownership was not verified.

*Vista Crescent Trust:* Inessa is trustee for this trust which owns 5952 Larch Street, Vancouver, B.C. whose beneficial owner is George's niece.  **NOTE:** Ownership was not verified.

*Dengin Canadian Partnership*:  99.99% owned by Inessa but George doesn't remember who owns the other .01%.

*0754304 B.C Ltd*: Owned 100% by George Dengin.  This LTD owns 50% interest in Youbou Lands Joint Venture which holds undeveloped land on Vancouver Island.  When asked about Youbou Lands in an IDR, response was, "none of the land was sold or transferred during the years 2006 through 2011".

*0791106 BC Ltd:* reported as dormant and owned 100% by George Dengin.

*Jameson House Trust:* The entity is treated as a grantor trust with George owning 100%.  The trust holds multiple units at the Jameson House building located at 838 West Hastings Street, Vancouver, B.C.  Inessa is one of seven beneficiaries.  She is listed on the Trust as "Settlor" and she and George are listed as Trustees.

*0917935 BC Ltd:* holds Penthouse 2; George owns 100% of 0917935 BC Ltd, *and 0917936 BC Ltd* holds Penthouse 4; George owns 100% of 0917936 BC Ltd.  Both LTDs are held in Jameson House Trust and this trust is owned 100% by George.

*0914478 BC Ltd is unit #1703 and 0914474 BC Ltd is unit #1803,* George owns 100% of these units which are also held in Jameson House Trust of which George owns 100%.  The condominium units held for rent in the Jameson House are units #1703 and #1803.  During the interview, George made no comment when asked why Inessa Dengin signed the rental agreements for these properties.  In an IDR response later; "Inessa has signed the lease because she is managing the property on behalf of the Taxpayer".

Taxpayer obscured his ownership of properties and assets by putting the legal titles in the names of trusts and entities and by setting up tiered ownership structures for those trusts and entities. Taxpayer concealed his ownership of properties and assets, and the trusts and entities holding the legal titles, by causing Inessa to be the trustee and beneficial owner of the trusts and the majority member/owner of the entities.

**Failure to cooperate during exam:**

George Dengin was not forthcoming with the IRS during his interviews.  He was vague, didn't answer some questions, and some he said he couldn't remember. **(Exhibit 7 – Cover page for 11-17-14)**

The taxpayer provided responses to most of the IDR issued by the Revenue Agent but most all of the information provided was received late (beyond extended due dates) and was not always complete. For example, March 3, 2016 Taxpayer's response stated, "To the extent that any of your requests call for the production of information belonging to Inessa Dengin, Taxpayer objects on the ground that Mrs. Dengin is not the subject of this examination and Taxpayer has no authority to provide her records to the IRS." IRS is accepting Mrs. Dengin's signed sworn statement before the Supreme Court of British Columbia, stating she has no income and the monies used to purchase the investments originated with funds owned and controlled by the Taxpayer. Therefore, with the exception of the RRSP and TSFA accounts held in the name of Inessa Dengin, the investments held under Inessa's name are really the Taxpayer's and the income generated by these investments should be included on his 1040 return. As previously stated, Inessa received CDN $40,000 RRSP monies in her divorce settlement from Ammi Tepper and the IRS accepts Inessa's RRSP account is separate income. The only other monies Inessa received in the divorce settlement was CDN $350,000 in cash. She stated she used this money towards the down payment on their family home located at 1939 Drummond Drive, Vancouver, B.C. Both of these amounts agree with what Ammi Tepper told the IRS. Inessa has no other source of income that she earns independently from George.

IRS never received any schedules or documents to support the holding periods or cost basis of any stocks reported on the filed Form 1040 tax returns. During the August 15, 2016 meeting with the POA and the Taxpayer's accountant, POA agreed with Exam that there were very few long term capital transactions. The POA and accountant also acknowledged they still did not have anything prepared to support which investments were long term nor did they have any documents to support the cost basis and holding periods of the stocks that the Revenue Agent had requested.

**US Federal Tax Returns Info:** *(Exhibit 6 - IMFOLTs).*

George Dengin filed his delinquent 2006 – 2011 Form 1040 tax returns on March 15, 2013 while under examination with the IRS. *(Exhibit 12 – US Form 1040s)*

There is no record of Taxpayer filing tax returns for any earlier years. Taxpayer did sign a statute extension for tax years 2006 through 2011 that will expire on 12/31/2016, but he will not sign another one to extend the statute beyond 12/31/2016.

Tax return for 2012 was filed on 10/24/2013; 2013 was filed on 10/21/2014; 2014 was filed on 6/30/2015; and 2015 is on extension; 2015 extension date is 10/15/2016.

All the above tax returns show Zero Dollar Tax liability.

Taxpayer hired Michael Cohen as Power of Attorney(POA), and RA received Form 2848 on October 17, 2013. POA told RA there were errors on the original filed returns and new ones were being prepared. POA sent RA <u>unsigned</u> Form 1040 "Draft" returns for tax years 2006 through 2011. POA did not provide any explanation as to what was wrong with the originally filed Forms 1040 other than they were wrong and new ones were being done *(Exhibit 13 – Draft amended returns)*. Changes which were made on these amended returns include the addition of interest income which was omitted, adding Schedule A

deductions, re-computing the At-Risk Carryover for Schedule C, re-calculating the foreign tax credits and changing some year's capital gains/losses. In addition, the Dengin Family Trust and Dengin Family Trust #2 reflected items incorrectly reported on the originally filed returns as well. The Draft amended Form 1040 for 2011 is the only the Taxpayer is showing any US income tax liability, which is $262,565.

Taxpayer did not have a social security number until he was notified that the IRS began an income tax audit. This audit started with a related party in July 2012. The Taxpayer was identified at that time as a non-filer. Taxpayer's accountant informed RA that the Taxpayer would be getting a social security card. Taxpayer received the card in December 2012. The letter to the Taxpayer from the Social Security Office is dated December 28, 2012. (*Exhibit 11 –Letter from SS*)

## Present Financial Condition:

Per Inessa's affidavit she states, "I am not otherwise employed and I do not earn a substantial income from another source outside of investment income that I earn from investing in the stock market and in stock market related deals with my husband, George." Inessa also states, "Throughout my marriage to George, I have had limited involvement in our finances: George has been primarily responsible for our finances." Based on her statement, it is reasonable to conclude that the gains listed on her Canadian tax returns were earned and/or realized through Taxpayer's talent as a financial broker and investor in stocks and real estate.

## Bank and Investment Accounts: (known accounts identified during the audit - all accounts are Canadian accounts)

- Union Securities (multiple accounts)
- Jordan Securities
- Vancity – multiple accounts
- Global Securities
- TD Waterhouse – multiple accounts

## Real Estate:

The family home located at 1939 Drummond Drive, Vancouver, BC, Canada on December 28, 2012 was valued at approximately U.S. $12,708,200.

The Whistler vacation home located at 2215 Lake Placid Road, Whistler, BC, Canada on December 28, 2012 was valued at U.S. $2,335,700.

The California vacation home located at 1813 Fernald Point, Santa Barbara, CA is currently listed for sale at U.S. $6,950,000.

The 2014 Form 1040 tax return is still reporting rental income.  Units 1703 and 1803, located at 838 West Hastings Street, Vancouver, BC,  Canada are held in the Jameson House Trust and were rented in 2011 so one or both may still be rentals.

**Income Reported on Canadian Tax Returns:**

The Dengin's file their Canadian tax returns regularly, a Summary of some of the tax returns are below. (Exhibit 14 – Canadian Tax returns).

Per George Dengin's filed Canadian tax returns, his reported net income (similar to AGI in US) is as follows:

| Year | Net Income for George (CDN$) | Stock sales (gross amount realized) | Gains per Canadian returns on stocks | Interest earned | Net Income for Inessa (From George's returns) | Comments |
|------|------|------|------|------|------|------|
| 2006 | (2,417,479.41) | 3,068,859.93 | 694,502.14 | 42,073.44 | 719,294.74 | Marked  he is a Canadian Citizen; loss came from a partnership |
| 2007 | 1,865,840.03 | 8,318,580.,80 | 1,339,005.28 | 418,864.04 | 3,157,680.96 | Marked he is a Canadian Citizen (Yes or no question on return); marked he owned "foreign income" more than CN $100K; |
| 2008 | (25,590.34) | 7,308,165.86 | (1,758,729.35) | 2,855.03 | 0 | Marked he is a Canadian Citizen (Yes or no question on return): the negative net income comes from interest expense |
| 2009 | 261,983.41 | 7,274,576.20 | 267,057.89 | 4,414.26 | 37.50 | Marked he is a Canadian |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | Citizen (Yes or no question on return) |
| 2010 | 10,243.15 | 12,639,297.33 | (8,727.96) | 28,363.66 | 3,950.06 | Marked he is a Canadian Citizen (Yes or no question on return); |
| 2011 | 3,467,841.50 | 3,170,017.57 | 215,305.62 | 2,751.15 | 78,669.55 | Marked he is a Canadian Citizen (Yes or no question on return); |

Per the Canadian tax returns filed for Dengin Family Trust which was created 6/01/1995 as a personal trust, George Dengin is the trustee, executor, liquidator, or administrator:

| Year | Net Income | Stock sales | Stock Gains | Comments |
|---|---|---|---|---|
| 2006 | (69,129.99) | 928,324.85 | 651,959.70 | loss of 393,517 for carrying charges (interest on bank loans) |
| 2007 | 55,519.64 | 660,719.75 | 117,452.27 | |
| 2008 | (47,047.45) | 3,361,303.08 | (295,485.84) | |
| 2009 | (27,151.69) | 2,705.00 | 705.00 | |
| 2010 | 43,437.60 | 101,780.00 | 91,810.20 | |
| 2011 | (1,892.68) | 2,638.00 | 2,174.64 | |

Per the Canadian tax returns filed for Dengin Family Trust #2, which was created 11/14/2000 as a personal trust, George Dengin is the trustee, executor, liquidator, or administrator:

| Year | Net Income | Stock Sales | Stock Gains | Comments |
|---|---|---|---|---|
| 2006 | (16,366.38) | 354.94 | (18,616.59) | |
| 2007 | 323,193.25 | 2,208,678.38 | 646,386.50 | |
| 2008 | (9,989.38) | 3,741,781.33 | (1,310,771.52) | |
| 2009 | 255,814.62 | 4,164,139.02 | 525,062.24 | |
| 2010 | 967,752.24 | 2,831,187.24 | 1,943,985.77 | |
| 2011 | 59,372.47 | 0 | (113,160.00) | |

Per the Canadian tax returns filed for Fernald Point Limited Partnership, which was created 7/08/2010 as a partnership, in care of Inessa Dengin Rental Property on the house in Santa Barbara, CA:

| Year | Net Income | Comments |
|------|-----------|----------|
| 2010 | (6,264) | |
| 2011 | 0 | It appears the property was not rented this year. |

Based on the above Individual, Trust, and Partnership returns filed with Canada, the Dengin's have a substantial amount of money/assets accumulated over the years; between stocks and real-estate ventures. Also the list of business entities described in the Concealed Assets section (above) which are owned directly or indirectly by George Dengin show that he has a healthy financial status. Of all the items listed, there is only one that is located in the U.S.; all the others are in Canada. The only one that is within the reach of the U.S. Government is the house in Santa Barbara, CA which is currently listed for sale.


**Location and Description of Asset for collection:**

1813 Fernald Point Lane, Santa Barbara, California 93108.
Assessor Parcel No:  007-380-020

Fernald Point Limited Partnership, a British Columbia Limited Partnership.

This is the only known asset in the US; all other assets/monies are in Canada.


**Method of Computation:** *(Exhibit 16; workpapers supporting the adjustments shown on Exhibit 15 - Form 4549-A) A summary document is attached to identify the line item labeled "Capital Gain or Loss" on Form 4549-A since the IRS system aggregates these adjustments into one line item.  Also a separate summary document was prepared for all of the "Chandler adjustments".)*

A large amount of the determined tax liability is due to the stock sales.  Taxpayer was unable or unwilling to provide a basis for the stocks sold.  POA agreed that almost all of the stock sales were short term sales.  Since Taxpayer is not providing the information of the basis or even when the stock was purchased, a calculation will be used reflecting the stock as purchased and sold in the same calendar year.

During the examination period, a stock's purchase price could, and often did, change significantly within a short period of time.  Due to the volume and number of trades (both purchases and sales) and the millions of shares of stock traded, it was concluded that a stock basis could not be accurately computed from the limited information available to the RA.  Based on this assessment and the desire to provide a reasonable and conservative estimate of cost, the gain or loss has been computed using the values reflected on the Canadian returns filed by Taxpayer,  Dengin Family Trust, and Dengin Family Trust #2.

The values have been converted to US dollars using the conversion rate reflected by the Taxpayer on the respective returns. The values used on the Canadian returns appear to be based on an average cost method, a computation method which is not acceptable for individual stock valuations for U.S. tax purposes but has been used nonetheless in computing the gain/loss to provide a conservative amount for the jeopardy assessment. The burden to substantiate basis remains with the taxpayer.

Taxpayer failed to timely file his Forms 1040 and failed to timely make the annual election on Form 8891 to defer taxation on income accumulated in his RRSP. Therefore, Taxpayer's undistributed RRSP earnings are taxable. Since neither the Taxpayer nor his accountant provided cost basis for the numerous stock transactions for the Taxpayer's RRSP Accounts and the IRS has deemed the Taxpayer an "ineligible individual", the IRS has attempted to identify the low and high cost basis for the stocks. Since the prices of the stocks could be volatile, the IRS has used the low cost as a reasonable basis in determining gain or loss. The use of a cost basis built on the high value of the stock would result in an unreasonable calculation of gain or loss due in part to the short term nature of each of the transactions. Further, if each stock was valued at the highest identified cost per share during the year few transactions would generate a gain for the taxpayer as the sales price of the stock would be equal to or less than the cost in most instances. It is unreasonable to assume the taxpayer would participate in stock transactions where he repeatedly breaks even or experiences a loss on the sale.

In addition to gains reported by the Taxpayer and the grantor trusts, the gain or loss reported by Inessa Dengin on returns filed in Canada have also been included in the computation for each year's 2006 - 2011. Per her sworn affidavit (Exhibit 1), Inessa said Taxpayer had trading authority over her accounts, that Taxpayer was responsible for the stock trades in her accounts, and that she did not have any money of her own other than that previously identified from her divorce settlement. The gains reported by Inessa were generated by Taxpayer's stock trading in her accounts. Taxpayer has a history of concealing his property and assets through the use of nominees, as explained above in the "Transfer of property to put out of the reach of the government" and "Concealed Assets" sections. Based on the foregoing, the stock trade gains reported by Inessa have been included in Taxpayer's taxable income. Also stated above, in the "Failure to Cooperate" section of this document, the Taxpayer has refused to provide any information regarding Inessa's assets or income. Without any supporting documentation to the contrary, the capital gain reported by the Inessa Dengin will be reflected as belonging to the Taxpayer.

The method of determining the examination adjustment for the other issues reflected on the Revenue Agent Report was varied. "Taxable interest" and "additional taxable interest – Inessa" were determined primarily from information reported on the filed Canadian tax returns. The ordinary dividends, the Form 4797 adjustment in 2006, and the disallowance of Schedule C expenses are adjustments generated by applying the proper tax treatment to the disposition of the taxpayer's interest in a partnership and the resulting installment sale, repossession, and subsequent sale of property received by the taxpayer in the transaction.

Itemized deductions replace the standard deduction for 2006, 2008, and 2009 as the Taxpayer provided draft returns which reflect significant Schedule A deductions. These items were not examined so including them in the computation allows the Taxpayer the benefit of all itemized deductions he

identified during the examination.   Additionally, the Taxpayer is allowed additional investment interest expense not reflected on submitted Schedule A based on the examination adjustments for the 2006, 2008, and 2009 tax years.   Adjustments to increase itemized deductions in tax years 2007, 2010 and 2011 are also attributable to the allowance of deductions reflected on the draft returns submitted by the Taxpayer, and any change to investment interest expense which resulted from other examination adjustments.   As in the other years, the Schedule A amounts were not examined and have been accepted as reported.

The exemption adjustment is statutorily computed due to the increased adjusted gross income determined on the report.

The net operating loss generated by the examination adjustments to the 2009 tax year has been carried back to tax year 2007 pursuant to IRC Section 172.  The Taxpayer did not make any elections which would affect the normal two-year carryback period.

No Self-Employment tax was computed on income reported on Schedule C.  The U.S. and Canada have a totalization agreement in place to eliminate any potential double taxation with respect to social security taxes.  The Taxpayer reported the earned income to Canada and as a resident of Canada it is that country which has the right to assert any employment tax on the earnings.

Foreign taxes paid to Canada, as on the Canadian tax returns filed by George Dengin, Inessa Dengin, and/or the grantor trusts were considered by the agent and allowed on George Dengin's Form 1040 as a foreign tax credit.   Foreign taxes paid in 2009 have been carried forward to 2010 and the corresponding Foreign Tax Credit allowed in tax year 2010.

Tax, Interest, and Penalty to be assessed under jeopardy assessment procedures by year: (Exhibit 15)

| Year | Tax | Penalty | Interest (as of 10/28/2016) | Total |
|---|---|---|---|---|
| 2006 | 4,257,926 | 1,916,067 | 2,898,791 | 9,072,784 |
| 2007 | 1,338,515 | 602,332 | 700,308 | 2,641,155 |
| 2008 | 822 | 370 | 345 | 1,537 |
| 2009 | 0 | 0 | 0 | 0 |
| 2010 | 798,767 | 359,445 | 223,553 | 1,381,765 |
| 2011 | 49,208 | 22,144 | 10,872 | 82,224 |
| TOTAL | 6,445,238 | 2,900,358 | 3,833,869 | 13,179,465 |

### Index of Exhibits:

1 – Inessa Affidavit

2 – Chicago Title Company: purchase of house at 1813 Fernald Point, Santa Barbara, CA

3 – Fernald Point Ltd Partnership Agreement; Canadian partnership that owns house in Santa Barbara, CA.

4 – Dengin Family Trust- Summary of Interview written by IRS Counsel Melanie Senick. Interview was with George Dengin, POA Michael Cohen, and chartered accountant, Brad Allen, conducted on November 17, 2014.

5 – DENG Interview summary of telephone interview with the George Dengin, Michael Cohen, and Brad Allen written by IRS GM Kim Slack.

6 – IMOLI, IMOLTs 2006-2015

7 – Cover page for 11-17-14 Interview, comments by RA Debra Pratum

8 – Vancouver Sun, June 27, 2006; Partnership dissolved into acrimony, litigation

9 – Vancouver Sun, July 12, 2008; business news

10 – Vancouver Condo Info, June 2006; Condos, crime and calling it quits

11 - Copy of letter from Social Security Administration

12 – 2006 through 2011 delinquent filed 1040 tax returns

13 – 2006 through 2011 unsigned 1040 "Draft" tax returns

14 – 2006 through 2011 Canadian Tax Returns:

      A: George Dengin,

      B: Dengin Family Trust #1

      C: Dengin Family Trust #2

      D: Fernald Point LTD

      E: Inessa Dengin

15 – Form 4549-A Income Tax Examination Changes; includes tax, penalties, and interest

16 – Form 886-A for audit adjustments on Form 4549-A

- A.  Additional Interest Income - Inessa
- B.  Schedule E – Trust Adjustment
- C.  Interest Income
- D.  Foreign Tax Credit
- E.  Schedule D Capital Gain/Loss (aggregate amount reported on Form 4549-A)
    - a.  Sales from Disregarded RRSP Account
        - i.  RRSP Low High Cost Basis of Stock
    - b.  Capital Gain/Loss; refer to Short Term Capital Gain Adjustment
    - c.  Schedule C; refer to Schedule D – Short Term Capital Gain Adjustment
- F.  Schedule of Chandler Adjustments
    - a.  Overview page
    - b.  Part A
        - i.  Schedule C – Other Expenses
        - ii.  Schedule D – Capital Gain
    - c.  Part B – Schedule E – Dividend
    - d.  Part C – Other Gains from 4797 – Installment Sale Gain
    - e.  Part D – Gain on Repossession and Loss from Subsequent 2009 Sale

17 – MFTRA Report

18 – 2009 NOLD



**FO**

FedEx First Overnight®

**FO**

FedEx First Overnight®

Produced using quality
and in partnership with
by Alpha-pointe,
866-240-1332 customer

SKILCRAFT