SANDRA R. BROWN
Acting United States Attorney
THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division
ANDREW T. PRIBE (CA SBN 254904)
Assistant United States Attorney
    Federal Building, Suite 7211
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-6551
    Facsimile: (213) 894-0115
    E-mail: andrew.t.pribe@usdoj.gov

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| GEORGE B. DENGIN, <br><br> Petitioner, <br><br> v. <br><br> COMMISSIONER OF INTERNAL REVENUE, <br><br> Respondent. | Case No.: CV 17-2485 R(JCx) <br><br> United States of America's response to petition for review of jeopardy assessment <br><br> Hearing date: May 1, 2017, at 10 a.m. <br> Courtroom 880 <br> Roybal Federal Building and Courthouse, Los Angeles, California <br><br> Judge Manuel L. Real |

**Table of Contents**

I. Introduction. ........................................................................................... 1
II. Factual summary. ................................................................................... 3
III. Petitioner's contentions........................................................................... 6
IV. The law of jeopardy assessments............................................................ 8
V. The Internal Revenue Service's making of the jeopardy assessment was reasonable under the circumstances.......................... 11
VI. Plaintiff does not challenge the amount of the assessment. ................ 15
VII. Conclusion............................................................................................. 15

**Table of Authorities**

**<u>CASES</u>**

*Cook v. Tait,*
    265 U.S. 47, 44 S. Ct. 444, 67 L. Ed. 895 (1924) .................................... 3

*Fourth Investment LP v. United States,*
    720 F.3d 1058, 1066 (9th Cir. 2011) ....................................................... 12

*G.M. Leasing Corp. v. United States,*
    429 U.S. 338, 97 S. Ct. 619, 50 L. Ed. 530 (1977) ................................. 12

*Goldberg v. United States,*
    1994 WL 794044 (C.D. Cal. 1994) (Wilson, J.) ............................... 10, 11

*Hecht v. United States,*
    609 F. Supp. 264 (S.D.N.Y. 1985) ....................................... 10, 11, 13, 14

*Helvering v. Taylor,*
    293 U.S. 507, 55 S. Ct. 287, 79 L. Ed. 623 (1935) ................................ 10

*Huff v. Commissioner,*
    135 T.C. 222 (T.C. 2010) ........................................................................ 3

*Pinto v. United States,*
    559 F. Supp. 432 (D. Kan. 1984) ........................................................... 13

*Radabenko v. Automated Equipment Corporation,*
    520 F.2d 540 (9th Cir. 1975) ................................................................. 14

*Revis v. United States,*
    558 F. Supp. 1071, 1074 (D.R.I. 1983) ............................................ 10, 15

*Scoville v. United States,*
    240 F.3d 1198 (8th Cir. 2001) ................................................................ 12

*Starbuzz Tobacco, Inc., v. United States,*
    2015 WL 12942152 (C.D. Cal. 2015) (Staton, J.) ................................. 10

*Varjabedian v. United States,*
    339 F. Supp. 2d 140 (D. Mass. 2004) ............................................... 9, 10

1 **STATUTES**
2 IRC § 1012(a) (26 U.S.C.) ............................................................................................ 3
3 IRC § 6212 ..................................................................................................................... 8
4 IRC § 6213 ..................................................................................................................... 8
5 IRC § 6303 ..................................................................................................................... 8
6 IRC § 6321 ..................................................................................................................... 8
7 IRC § 6322 ..................................................................................................................... 8
8 IRC § 6331 ..................................................................................................................... 8
9 IRC § 6861 ..................................................................................................................... 9
10 IRC § 6861(a) ................................................................................................................ 8
11 IRC § 6862 ..................................................................................................................... 9
12 IRC § 7429 ............................................................................................................... 9, 10
13 IRC § 7429(b) .............................................................................................................. 11
14 IRC § 7629(b)(3)(A) ...................................................................................................... 9
15 IRC § 7629(b)(3)(B) ...................................................................................................... 9
16 IRC § 7429(f) ............................................................................................................... 10
17 IRC § 7429(g) .............................................................................................................. 10
18 IRC § 7429(g)(2) .......................................................................................................... 15
19 **REGULATIONS**
20 Treas. Reg. § 1.6851–1(a)(1) .................................................................................. 9, 13
21 Treas. Reg. § 301.6861–1(a) ................................................................................... 9, 13

## I.     Introduction.

The administrative assessment of taxes allows the IRS to collect a tax through levy and creates the Government's federal tax lien against property. The assessment of taxes, however, is the end of what may be a long process involving the collection of information, the giving of notice, and potential litigation.

Sometimes, however, the ability of the IRS to collect taxes may be jeopardized before the completion of the normal assessment process.

In such instances, Congress mandates that the IRS "shall" immediately make a jeopardy assessment, which allows the IRS to protect its ability to collect any tax that may be due.

Congress provided for limited judicial review of such jeopardy assessments. This review is summary in nature, may be determined on affidavits without a hearing, is not subject to the rules of evidence, and is not reviewable by any other court.

Congress designed the proceeding so that the Court only determines (1) whether the making of the jeopardy assessment was reasonable under the circumstances and (2) whether the amount of the assessment was appropriate under the circumstances. The Court's summary determination in the jeopardy-assessment proceeding has no effect on the determination of the taxpayer's actual tax liability in any subsequent proceeding. Rather, the proceeding is simply designed to review the reasonableness of the IRS's actions in executing Congress' mandate to protect the public fisc.

Here, Mr. Dengin, Petitioner, is an American citizen residing in Canada who did not timely file tax returns for tax years 2006 through 2011, the years that were under audit by the IRS. The only known asset of Mr. Dengin within the United States is the Fernald Point property located in Santa Barbara. Relying on sworn statements made to a Canadian court by

1  Inessa Dengin, Mr. Dengin's wife, in 2012 in proceedings in which she
2  sought money from her prior husband, the IRS determined that, although
3  Mrs. Dengin was the nominal owner of the Fernald Point property, Mr.
4  Dengin was the true owner.  Specifically, Mrs. Dengin swore to the Canadian
5  court that the money used to purchase the Fernald Point property "came
6  primarily from George [Dengin]" and that Mr. Dengin "directly or indirectly
7  pays for the expenses associated with" the Fernald Point property.  Indeed,
8  Mrs. Dengin swore to the Canadian court that she did "not directly or
9  indirectly" contribute to the purchase price of the Fernald Point property.
10       Now, Petitioner claims that Mrs. Dengin's 2012 sworn statement to the
11 Canadian court when she was trying to get money from her ex-husband was
12 "not entirely accurate[.]"  Rather, the Fernald Point property "is not owned,
13 either directly or indirectly, by Petitioner."  Directly contradicting her prior
14 sworn testimony to the Canadian court, Mrs. Dengin now swears to this
15 Court that the funds used to purchase the Fernald Point property were
16 "entirely" hers.
17       The Court need not decide whether Mrs. Dengin lied to the Canadian
18 court when she was trying to get money from her ex-husband or is lying now
19 when she and her current husband are trying to shield the Fernald Point
20 property from IRS collection.  Mrs. Dengin's contradictory sworn testimony
21 before two different courts does not show that the IRS was unreasonable in
22 relying on her only sworn testimony at the time in making the jeopardy
23 assessment.  Indeed, quite the opposite.
24       In any event, the only issue the Court need decide is whether the IRS's
25 determination that its ability to collect against Mr. Dengin was jeopardized
26 by the listing for sale of the Fernald Point property was reasonable.
27
28

## II.     Factual summary.

George Dengin is an American citizen permanently residing in Canada with his wife, Inessa Dengin.[1] Mr. Dengin invests in stocks and real estate from which he derives most, if not all, of his income.[2] For tax years 2006 through 2011, Mr. Dengin did not file federal income-tax returns until March 2013, after he was already under examination by the IRS.[3] In each of the six tax returns he filed late with the IRS in March 2013, Mr. Dengin claimed that he did not owe any federal income tax.[4]

Citizens of the United States are taxed on their worldwide income.[5] Accordingly, even though Dengin resides in Canada and may transact most of his business there, as a United States citizen, he is required to file federal income-tax returns. To determine a gain or a loss from a stock transaction, the basis of the asset (generally speaking, the price for which it was purchased)[6] is necessary information.[7] During the course of the IRS's audit, Mr. Dengin did not produce information from which his actual basis in the stocks he traded could be determined.[8]

In a phone interview with the IRS in November 2014, Mr. Dengin said he did not have any financial accounts within the United States.[9]

---

[1] Declaration of Debra Pratum, ¶ 7(a) (attached).

[2] *Id.,* ¶ 7(i).

[3] *Id.,* ¶ 7(m).

[4] *Id.,* ¶ 7(o).

[5] *Huff v. Commissioner,* 135 T.C. 222, 230 (T.C. 2010) (*citing Cook v. Tait,* 265 U.S. 47, 56, 44 S. Ct. 444, 67 L. Ed. 895 (1924)).

[6] IRC § 1012(a) (26 U.S.C.).

[7] Pratum decl., ¶ 13.

[8] *Id.,* ¶ 14.

[9] *Id.,* ¶ 8.

3

Inessa Dengin, Mr. Dengin's wife, nominally owns property in Santa Barbara, California, which is referred to here as the Fernald Point property.[10] The IRS concluded that this property really belonged to Mr. Dengin based on Mrs. Dengin's 2012 affidavit submitted in a Canadian court in furtherance of her claim for delinquent child-support payments from her prior divorce.[11] Specifically, Mrs. Dengin swore:

- "1813 Fernald Point, Santa Barbara, California (the 'Fernald Point Property'): I am the sole shareholder in a numbered holding company, 0885303 B.C. Ltd. ('My Holding Company'), incorporated in July, 2010.  My Holding Company is a general partner in the Fernald Point limited Partnership (the 'Fernald LP'), and owns 1 % of the partnership units in the Fernald LP.  I personally hold 4,998,000 limited partnership units in the Fernald LP, representing 98% of the Fernald LP, and the Dengin Family Trust (I am not a beneficiary of this trust) owns the other 1 % of the Fernald LP.[12]
- "The Fernald LP owns the Fernald Point Property.  **George purchased this property for $5,100,000 ,and established the Fernald LP, and My Holding Company, in July, 2010.**  When the Fernald Point Property was purchased, we inherited a tenant with the property, whom we could not have removed until approximately September, 2010.  This resulted in a rental income loss recorded in my tax return in 2010.  We will not have another tenant in this property.  I do not expect to earn any income from

---

[10] Pratum decl., ¶ 9; Inessa Dengin 2012 affidavit (attached as exhibit 2 to the Pratum decl.), ¶ 36(c).

[11] Jeopardy recommendation report at 2 (attached as exhibit 1 to the Pratum decl.).

[12] Inessa Dengin 2012 affidavit, ¶ 36(c).

4

<blockquote>
this source in the future, as the Fernald LP has been structured so as not to incur an income."[13]

- "**I acquired my beneficial interest in the 2005 Drummond Drive Property Trust, the 2005 Lake Placid Trust, the Jameson House Trust, and the Fernald LP through George, at no direct financial cost to me.** I was added as a beneficiary to the 2005 Drummond Drive Property Trust and the 2005 Lake Placid Trust in 2005, and was added as a beneficiary to the Jameson House Trust in 2011. **The funds used to acquire the properties owned by the 2005 Lake Placid Trust, the Jameson House Trust, and the Fernald LP came primarily from George, and George directly and indirectly pays for the expenses associated with these properties** from our joint VanCity line of credit, which is the account that George and I utilize for our day to day expenses. With respect to the Drummond Drive Property, I contributed approximately $350,000 towards the $3,500,000 purchase price for this property, with funds from my divorce from the Respondent. George paid for the remaining amount of the purchase price of this property. **I have not directly or indirectly contributed to the purchase price of the properties owned by the 2005 Lake Placid Trust, the Jameson House Trust, and the Fernald LP.**"[14]
</blockquote>

---

[13] Inessa Dengin 2012 affidavit, ¶ 36(c) (emphasis added).
[14] *Id.,* ¶ 38 (emphasis added).

5

In addition, in the purchaser's direction to the Chicago Title Company regarding how title to the Fernald Point property should be vested, Mr. Dengin signed in his individual capacity.[15]

In February 2016, the Fernald Point property—the only property within the United States that the IRS determined belonged to Mr. Dengin—was placed on the market for $8,250,000.[16] In April 2016, the asking price was reduced to $7,750,000 and in May 2016, the asking price was reduced to $6,950,000.[17]

Based on the potential sale of the Fernald Point property, as well as the penchant of Mr. Dengin to park assets in the name of nominees, the IRS became concerned that its ability to collect Mr. Dengin's unpaid federal tax liability was jeopardized.[18] Accordingly, the IRS made a jeopardy assessment of $13,179,463.95 against Mr. Dengin on November 4, 2016, and, on the same day, recorded notices of federal tax lien protecting its interest in the Fernald Point property.[19]

## III. Petitioner's contentions.

Mr. Dengin contends that the IRS's conclusion that he is the true owner of the Fernald Point property is incorrect.[20] Rather, according to Mr. Dengin, his wife Inessa Dengin is the real owner of the property. And Mrs.

---

[15] Exhibit 3 to the Pratum decl.

[16] Pratum decl, ¶ 9(g).

[17] *Id.,* ¶ 9(h) and (i).

[18] Inessa Dengin 2012 affidavit, ¶¶ 36(a), (b), (g), 38; IRS letter dated Nov. 4, 2016 (attached as exhibit 1 to Plaintiff's motion (dkt. 1)) at page 2 of 6 (page ID # 8).

[19] IRS letter dated Nov. 4, 2016 (attached as exhibit 1 to Plaintiff's motion (dkt. 1)); IRS notices of federal tax lien (attached as exhibit 2 to Plaintiff's motion) (page ID # 14–16, 18–21).

[20] Petitioner's memorandum in support of his motion for review of jeopardy assessment (dkt. 2, filed March 30, 2017) at 5 (page ID # 59).

1  Dengin now swears that the money used to the purchase the Fernald Point
2  property was "entirely" hers.[21]

3  According to Mr. Dengin, Mrs. Dengin's prior sworn statements to the
4  Canadian court were "not entirely accurate[.]"[22]  Mr. Dengin acknowledges
5  that Mrs. Dengin's prior sworn testimony that two properties—the Lake
6  Placid Road property in Whistler, British Columbia, and the two penthouses
7  on West Hastings in Vancouver, British Columbia—were purchased with his
8  money but nominally placed in his wife's name is accurate.  The only
9  inaccuracy, according to Mr. Dengin, is her identical testimony as to the
10 Fernald Point property, which is the only property within the United States
11 and thus, the only property within reach of the Internal Revenue Service.

12 Mrs. Dengin states in her new affidavit that she "wish[es] to explain
13 and clarify certain statements that I made in my 2012 Affidavit."  She then
14 points to numerous documents purportedly supporting Petitioner's
15 contention that he did not pay for the Fernald Point property.  Mrs. Dengin
16 does not explain, however, why she falsely—if she is to be believed now—
17 swore to the Canadian court that the money used to purchase the Fernald
18 Point property (as well as the Lake Placid property and the penthouses in
19 Vancouver) "came primarily from George" and that she "did not directly or
20 indirectly" contribute to the purchase price of the properties.

---

[21] Inessa Dengin 2017 affidavit (dkt. 4 filed March 30, 2017), ¶31 (page ID # 83).

[22] "The [IRS] Report substantially relies on the following sentence included in paragraph 38 of the 23-page 2012 Affidavit: 'The funds used to acquire the properties owned by the 2005 Lake Placid Trust, the Jameson House Trust, and the Fernald LP came primarily from George, and George directly or indirectly pays for the expenses associated with these properties from our joint VanCity line of credit, which is the account that George and I utilize for our day to day expenses.'  This sentence, which relates to three properties, while accurate as to two of them, the 2005 Lake Placid Trust and the Jameson House Trust, is not entirely accurate as to the Fernald Point property."  Petitioner's memorandum at 15 (page ID # 69).

7

1     But Mrs. Dengin's statements now do not render the IRS's reliance on
2 her prior sworn statements unreasonable at the time the jeopardy
3 assessments were made.
4     In his petition, Petitioner concedes that he is only challenging the
5 making the jeopardy assessment, not its amount.[23]

### IV. The law of jeopardy assessments.

    Generally speaking and assuming that a tax audit detects a tax deficiency, before the IRS can collect the tax deficiency, the deficiency must be assessed.[24] Before a tax deficiency can be assessed, the IRS must send a notice of deficiency to the taxpayer.[25] The taxpayer then has 90 days to file a petition in the Tax Court challenging the IRS's determination.[26] If the taxpayer does so, the IRS may not assess the deficiency until after the Tax Court's decision becomes final.[27]

    Should the IRS become concerned that its ability to assess or collect a tax will be "jeopardized by delay," Congress mandated in § 6861(a) of the Internal Revenue Code (26 U.S.C.) that the IRS "shall … immediately assess" the tax. In such a situation, the IRS may determine immediately the amount of tax due, serve notice of the jeopardy assessment on the taxpayer,

---

[23] Petitioner's motion for review of jeopardy assessment, (dkt. 1, filed March 30, 2017), ¶5 ("Petitioner's is not contesting the amount of the assessment at this time.") (page ID # 3).

[24] *See* Internal Revenue Code (26 U.S.C.) §§ 6303 (within 60 days after assessment, notice and demand to be sent to the taxpayer); 6321 (the United States shall have a lien upon all property for unpaid taxes), 6322 (the lien arises on assessment of the tax), 6331 (if tax not paid within 10 days after notice and demand, the IRS may levy on property to collect tax).

[25] IRC § 6212 (authorizing notice of deficiency to taxpayer upon determination of tax deficiency).

[26] IRC § 6213.

[27] *Id.*

8

1  immediately demand payment, and immediately levy on the taxpayer's
2  property.[28]
3  Section 7429 of the Internal Revenue Code provides for a limited
4  judicial review of this administrative determination by the IRS.  Under this
5  limited review, the Court is to determine:
6      1. Whether the making of the jeopardy assessment was reasonable
7         under the circumstances; and
8      2. Whether the amount assessed was appropriate under the
9         circumstances.[29]
10  As set forth in the Treasury Regulations, a jeopardy assessment "will"
11  be made if collection is jeopardized due to at least one of the following
12  conditions being present:

- The taxpayer is, or appears to be, designing quickly to depart from the United States or to conceal himself.
- The taxpayer is, or appears to be, designing quickly to place his property beyond the reach of the Govenrment either by removing it from the United States or by concealing it or by transferring it to other persons or by dissipating it.
- The taxpayer's financial solvency appears to be imperiled.[30]

Note that Mr. Dengin's contention that a jeopardy assessment is "only" appropriate if one of these conditions is present[31] is not correct.  As stated by the district court in *Varjabedian v. United States,* although "courts

---

[28] IRC §§ 6861, 6862.
[29] IRC § 7629(b)(3)(A) and 7629(b)(3)(B).
[30] Treas. Reg. §§ 1.6851–1(a)(1), 301.6861–1(a).
[31] Petitioner's memorandum at 2 (page ID # 56).

9

1 traditionally consider these three conditions, the analysis is not in any way,
2 shape or form restricted thereto."[32]

3 The court in *Varjabedian* also clarified that the issue is not whether
4 the Government is correct in concluding that its ability to collect was
5 imperiled, but only whether, under the circumstances, its ability to collect
6 "appear[s]" to be jeopardized.[33]

7 Under IRC § 7429(g), the Government bears the burden of proof as to
8 the whether the jeopardy assessment was reasonable and the taxpayer bears
9 the burden of proof as to whether amount of the assessment is appropriate
10 under the circumstances.[34] As noted by the district court in *Hecht v. United*
11 *States,* "[t]he amount assessed by the IRS is presumed to be reasonable."[35]

12 Reasonable, in this context, means something more than not arbitrary
13 and capricious, but something less than supported by substantial evidence,
14 as stated by this Court in *Goldberg v. United States* (Wilson, J.).[36]

15 The judicial review under IRC § 7429 is summary in nature, may be
16 determined on the affidavits filed without a hearing, and is not subject to the
17 rules of evidence.[37] Section 7429(f) provides that this Court's determination
18 is "final and conclusive and shall not be reviewed by any other court." But
19 the Court's determination as to the propriety of the jeopardy assessment has
20 "no effect upon the determination of the correct tax liability in a subsequent

---

[32] 339 F. Supp.2d 140, 155 (D. Mass. 2004) (*quoting Revis v. United States,* 558 F. Supp. 1071, 1074 (D.R.I. 1983)) (internal quotations omitted).

[33] 339 F. Supp. at 155.

[34] *See also Starbuzz Tobacco, Inc., v. United States,* 2015 WL 12942152, * 2 (C.D. Cal. 2015) (Staton, J.); *Hecht v. United States,* 609 F.Supp. 264, 266 (S.D.N.Y. 1985).

[35] *Hecht,* 609 F.Supp. at 266 (*citing Helvering v. Taylor,* 293 U.S. 507, 55 S. Ct. 287, 79 L. Ed. 623 (1935) and other cases).

[36] 1994 WL 794044, * 1 (C.D. Cal. 1994).

[37] *Hecht,* 609 F. Supp. at 266 and cases cited therein.

10

1 proceeding."[38] Because Petitioner is not challenging the amount of the
2 assessment,[39] the only issue here is the reasonableness of the IRS's jeopardy
3 assessment.

4     The Court is to review the information available to the IRS at the time
5 of the jeopardy assessment as well as any other information that bears on
6 the issue, according to this Court in *Goldberg*.[40] The Government need not
7 prove that the taxpayer was in fact attempting to put his assets outside the
8 reach of the IRS; rather, simply giving the appearance of such an intent
9 justifies a jeopardy assessment.[41]

10     In *Hecht,* the district court found that the taxpayer's submission of
11 affidavits asserting that the information relied on by the IRS was inaccurate
12 does not defeat a jeopardy assessment. The court said "the mere existence of
13 a factual dispute is not sufficient to invalidate a jeopardy assessment."[42] The
14 court noted that "if that were the case, few jeopardy assessments could
15 survive, and the congressional scheme enunciated in 26 U.S.C. § 7429(b)
16 would be effectively nullified."[43]

## V. The Internal Revenue Service's making of the jeopardy assessment was reasonable under the circumstances.

20     Relying on Mrs. Dengin's 2012 affidavit submitted to the Canadian
21 court when she was trying to get money from her ex-husband, the IRS

---

[38] 1990 WL 169258, * 7 (1990).

[39] Petitioner's motion, ¶ 5 (page ID # 3).

[40] 1994 WL 794044, * 1 (C.D. Cal. 1994).

[41] *See Goldberg,* 1994 WL 794044, * 2 ("Whether they in fact intended to liquidate their assets and thereby avoid payment of their taxes is irrelevant. It is the fact that they gave the appearance of such things that is relevant and controlling.").

[42] 609 F. Supp. at 266.

[43] *Id.*

11

1 concluded that the Fernald Point property was held by Mrs. Dengin as the
2 nominee for Mr. Dengin. A nominee, according to the Eighth Circuit in
3 *Scoville v. United States,* "holds bare legal title to property for the benefit of
4 another."[44] As found by the Supreme Court in *G.M. Leasing Corp. v. United*
5 *States,* the Government may enforce collection against the taxpayer's
6 property held by the nominee.[45]

7 According to Inessa Dengin's sworn statement to the Canadian court,
8 Mr. Dengin "purchased" the property with funds that were primarily his.[46]
9 Mrs. Dengin swore to the Court that she did not "directly or indirectly
10 contribute[] to the purchase price" of the Fernald Point property.[47] She
11 acquired her interest in the Fernald Point property "at no direct financial
12 cost" to her.[48] Consistent with Mr. Dengin's practice as to other properties,
13 he titled the Fernald Point property in the name of entities that were
14 nominally Mrs. Dengin's.[49]

15 The Fernald Point property is the only property of Mr. Dengin's within
16 the United States. When it was listed for sale, the IRS rightly determined
17 that its ability to collect Mr. Dengin's delinquent tax liabilities became
18 jeopardized.

19 One justification for a jeopardy assessment specified in the Treasury
20 Regulations is that the taxpayer appears to be quickly designing to depart

---

[44] 250 F.3d 1198, 1202 (8th Cir. 2001). *See also Fourth Investment LP v. United States,* 720 F.3d 1058, 1066 (9th Cir. 2011).
[45] 429 U.S. 338, 349–351, 97 S. Ct. 619, 50 L. Ed. 530 (1977).
[46] Inessa Dengin 2012 affidavit, ¶¶ 36(c), 38.
[47] *Id,* ¶ 38.
[48] *Id.*
[49] *Id.,* ¶ 36(a), (b), (g).

12

from the United States.[50] Here, Mr. Dengin already permanently resides in Canada. That, in and of itself, justifies the jeopardy assessment.

Another justification for a jeopardy assessment specified in the Treasury Regulations is if the taxpayer is or appears to be designing quickly to place his property beyond the reach of the Government through transfer.[51] The concept of quickly is a relative to the circumstances. Thus, even though it may take time for real property to sell, the placement of real property on the market, in the absence of other available assets, justifies a jeopardy assessment. This is especially true when the taxpayer already resides in another country or there is substantial likelihood that the taxpayer will leave the United States. In *Pinto v. United States,* the district court found that the IRS's reliance on (1) the listing of the taxpayer's house for sale, and (2) circumstances suggesting that the taxpayer may move to Germany justified the jeopardy assessment.[52]

In *Hecht,* the attempt to sell the taxpayer's $1 million home and the attempt to place funds outside of the United States supported the IRS's jeopardy assessment, which the district court found to be reasonable.[53] Further, as the district court in *Revis* noted, "quickly" is a relative concept that may even entail a period of years.[54]

As this Court said in *Goldberg,* whether the taxpayers "in fact intended to liquidate their assets and thereby avoid payment of their taxes is

---

[50] Treas. Reg. §§ 1.6851–1(a)(1); 301.6861–1(a).
[51] *Id.*
[52] 559 F. Supp. 432, 434–35 (D. Kan. 1984)
[53] 609 F. Supp. at 266.
[54] 558 F. Supp. at 1078.

13

irrelevant."[55] The Court said that it "is the fact that they gave the appearance of such things that is relevant and controlling."[56]

Mr. Dengin's elaborate explanation of Mrs. Dengin's wealth does not show that the IRS's jeopardy assessment was unreasonable.

First, the presentation of numerous documents in Mrs. Dengin's name does not establish that she, and not Mr. Dengin, purchased the property with her funds. The entire gist of her prior sworn testimony to the Canadian court was that he, not her, was the purchaser of the property even though her name appears on the documents. She swore that she owned the Fernald Point property, the Lake Placid property, and the two penthouses in Vancouver in name only while Mr. Dengin actually paid for them.

Second, even assuming the veracity of the Mrs. Dengin's current sworn testimony that she did have money to purchase the Fernald Point property, the money for the purchase of the Fernald property came from a commingled joint account.[57]

Petitioner has simply shown that his wife will make contradictory sworn statements depending on which testimony better suits her and her husband's interests. Such a self-created factual dispute does not show that the IRS's determination was unreasonable.[58] As in *Hecht,* the submission of affidavits asserting that the information relied on by the IRS was inaccurate does not defeat the jeopardy assessment.

The Government also notes that even if the property is no longer listed for sale, it can easily be listed for sale again.

---

[55] 1994 WL 794044, * 2 (C.D. Cal. 1994).

[56] *Id.*

[57] Inessa Dengin 2017 affidavit (dkt. 4, filed March 30, 2017), ¶¶ 25, 31 (page ID # 82, 83).

[58] *Cf. Radabenko v. Automated Equipment Corporation,* 520 F.2d 540, 543–544 (9th Cir. 1975) (finding that a party cannot create his own factual issue to defeat summary judgment by presenting an affidavit contradicting his own prior deposition testimony).

14

1     The IRS's determination that the Fernald Point property belonged to
2 Mr. Dengin and that its ability to collect against Mr. Dengin was jeopardized
3 by the listing of that property for sale was reasonable under the
4 circumstances.

## VI. Plaintiff does not challenge the amount of the assessment.

    In his motion, Plaintiff states that he "is not contesting the amount of the assessment at this time."[59] Under IRC § 7429(g)(2), Petitioner has the burden of proof to show that the amount of the jeopardy assessment was in appropriate under the circumstances. The amount of the jeopardy assessment is presumptively correct, according to the district court in *Revis*.[60] Further, as noted by the court in *Revis,* the purpose of this summary proceeding is not to determine the taxpayer's actual tax liability.[61]

    Because Plaintiff states that he is not challenging the amount of the assessment and does not introduce any evidence contradicting the Government's computation of the assessment, the amount of the Government's jeopardy assessment is appropriate under the circumstances.

## VII. Conclusion.

    Based on Mrs. Dengin's sworn statements to the Canadian court in 2012, the IRS concluded that Mrs. Dengin held the Fernald Point property as the nominee of Mr. Dengin. That property is the only asset within the United States belonging to Mr. Dengin, who permanently resides in Canada. When this property was listed for sale, the IRS rightly concluded that its

---

[59] Dkt 1 at 2 (page ID # 3).

[60] 558 F.Supp. at 1079 (stating that there "is an initial presumption that the amounts assessed are suitable.").

[61] *Id.*

15

1 ability to collect against Mr. Dengin was jeopardized.  In such circumstances,
2 Congress mandated that the IRS "shall" make a jeopardy assessment to
3 protect the public fisc.
4 　　　In his attempt to show that the IRS incorrectly determined that he was
5 the true owner of the Fernald Point property, Mr. Dengin submits the
6 affidavit of Mrs. Dengin, which contradicts her prior affidavit to the
7 Canadian court.  But the Court does not need to decide whether the IRS's
8 determination was correct.  Nor does the Court need to decide whether Mrs.
9 Dengin presented false statements to the Canadian court or to this Court.
10 The only issue is whether the IRS's determination was reasonable.
11 　　　Here, the IRS was reasonable in making the jeopardy determination
12 because it is reasonable for the IRS to rely on Mrs. Dengin's 2012 sworn
13 statement to the Canadian court that she did "not directly or indirectly
14 contribute[] to the purchase price" of the Fernald Point property.
15 　　　And so, because the IRS's determination was reasonable, the petition to
16 abate the jeopardy assessment must be denied.

Dated: April 17, 2017　　　　　　　SANDRA R. BROWN
　　　　　　　　　　　　　　　　　　Acting United States Attorney
　　　　　　　　　　　　　　　　　　THOMAS D. COKER
　　　　　　　　　　　　　　　　　　Assistant United States Attorney
　　　　　　　　　　　　　　　　　　Chief, Tax Division

　　　　　　　　　　　　　　　　　　**/s/ Andrew T. Pribe**
　　　　　　　　　　　　　　　　　　ANDREW T. PRIBE
　　　　　　　　　　　　　　　　　　Assistant United States Attorney

16